COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| JERRY VERNON, | § | No. 08-11-00079-CV |
| Appellant, | § | Appeal from |
| v. | § | 448th District Court |
| WILLIAM PERRIEN AND ROXANNE PERRIEN, | § | of El Paso County, Texas |
| Appellees. | § | (TC # 2008-456) |

## O P I N I O N

Jerry Vernon appeals from a judgment in favor of William and Roxanne Perrien. Finding no error, we affirm.

## FACTUAL SUMMARY

On May 5, 1992, Rene Vernon executed a warranty deed transferring title to certain real property to Raymond W. Shaw. The property is described as Tract Three-B-Thirty-Four (3-B-34), W.F. Hagan Survey, No. 146, in El Paso County (the "Property"). On the same date, Ms. Vernon sent a letter to Judy Paul at 333 Holguin in Vinton, Texas, stating:

> This letter is to inform you that tha [sic] property in which you reside, 333 Holguin, has been sold to Raymond W. Shaw. All future rents and negotiations should be presented to Mr. Shaw in care of Mrs. Vera Shaw, P. O. Box 6384, Lubbock, Texas, 79493.

On August 27, 1992, the 205th District Court of El Paso County, Texas, signed a judgment in cause number 92-7704 which was styled *Judy Paul v. Rene M. Vernon and Vera Shaw*. That judgment provided that Raymond W. Shaw was the rightful owner of the fee simple title to real property located in El Paso County. The property is described as Tract 3-B-34, W.F. Hagan

Survey, No. 146, in El Paso County (the "Property"). On May 8, 2000, William Perrien and Roxanne Perrien purchased the Property from Raymond W. Shaw by a contract for deed. They did not conduct a title search. The purchase price for the Property was $25,000 and the Perriens made a $5,000 down payment. The land was worth $16,587 at the time of the sale and an old mobile home located on the property was valued at approximately $10,000. The Perriens paid the remainder they owed Shaw in 2006 and received a deed which they recorded.

The Perriens made significant improvements to the Property and paid back taxes from 1999 and 2000. They spent approximately $5,000 improving the mobile home but it was destroyed in 2006 by severe rains and flooding. The Perriens borrowed $80,000 and built a 3,800 square foot home themselves with the help of friends and family. In 2009, the land and home had a tax valuation of $16,588 and $69,209, respectively, but other evidence showed that the Property had a market value of approximately $125,000. The present dispute arose in 2007 when the Perriens decided to sell their home and move to California to care for Mrs. Perrien's parents. They agreed to sell the Property for $110,000 to Frederico Gonzalez but a title search revealed that Raymond Shaw had transferred a 90 percent interest in the Property to Mexada Corporation by a tenants in common warranty deed. The warranty deed was executed on June 8, 1992, approximately one month after Ms. Vernon transferred title to Shaw and more than two months before the trial court entered the 1992 judgment, but the deed was not recorded until August 1993. Mexada is a Nevada Corporation. According to records on file with Nevada's secretary of state, Jerry Vernon is the secretary and Rene Vernon is the president and director of Mexada. Rene is Jerry Vernon's daughter. Despite claiming ownership of a 90 percent interest in the property, Mexada and Vernon never occupied the real property, never paid any real property taxes or insurance, and never paid for any maintenance, repairs, improvements or

utilities on the Property.  On February 4, 2008, the Perriens filed a suit to quiet title against Mexada and they sought a declaratory judgment of their rights with respect to the Property.  The Perriens sought attorney's fees under the Declaratory Judgments Act.  They also alleged slander of title and asserted that Mexada is estopped from claiming ownership of the Property by virtue of the 1992 judgment under the principles of collateral estoppel and res judicata.  The Perriens sought both compensatory and exemplary damages.  Alternatively, the pleadings included a suit for partition.

On March 3, 2008, Ms. Vernon filed an answer on behalf of Mexada reflecting that she is the secretary of Mexada and Jerry Vernon is the president.  On August 14, 2008, Mexada executed a quitclaim deed of its interest in the Property to Jerry Vernon.  Vernon signed the quitclaim deed on behalf of Mexada as its president.[1]  The Perriens amended their petition to add Vernon as a defendant.  The amended petition included the claims found in the original petition but additionally alleged that the quitclaim deed had clouded title to the Property and it alleged that Mexada and Vernon were estopped under the principles of res judicata and collateral estoppel from claiming ownership of the Property.  The amended petition also added a cause of action for civil conspiracy.  Following a non-jury trial, the trial court entered judgment in favor of the Perriens.  The court entered a declaratory judgment that the Perriens are the rightful owners of 100 percent of the fee simple title to the Property.  The court also ordered, adjudged, and decreed that the Perriens are the sole and rightful owners of 100 percent of the fee simple title to the Property as purchasers of the Property from Raymond W. Shaw and he was the rightful owner of 100 percent of the fee simple title to the Property by virtue of the 1992 judgment.  The court ordered that both the June 8, 1992 deed and the quitclaim deed are discharged and removed as a cloud on the Perriens' title to the Property.  The court awarded the

---

[1] In 2008, Vernon filed handwritten pleadings on behalf of Mexada stating that he was incarcerated in New Mexico.

Perriens compensatory damages in the amount of $12,000, exemplary damages in the amount of $12,000, and attorney's fees in the amount of $10,000. The trial court entered findings of fact and conclusions of law. Vernon filed notice of appeal but Mexada has not appealed.

## SUBJECT MATTER JURISDICTION

In his first issue, Vernon complains that the judgment is void because the court adjudicated the land ownership dispute between the parties as a declaratory judgment when Texas law requires that disputes about ownership be litigated in a trespass-to-try-title action. Vernon contends that the trial court lacked subject matter jurisdiction and requests that the entire judgment be vacated and set aside. The Perriens have not directly addressed this issue in their brief.

The Perriens' first amended petition included a request for declaratory relief and also stated a quiet title claim. They did not expressly allege a trespass to quiet title claim. Vernon correctly states that a trespass to try title action is the exclusive method to adjudicate rival claims of title to real property. *See* TEX.PROP.CODE ANN. § 22.001 (West 2000)("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004);[2] *Ramsey v. Grizzle*, 313 S.W.3d 498, 503 (Tex.App.--Texarkana 2010, no pet.). The prevailing party's remedy is title to, and possession of, the real property interest at issue. *Teon Management, LLC v. Turquoise Bay Corporation*, 357 S.W.3d 719, 723 (Tex.App.--Eastland 2012, no pet. h.). To maintain an action of trespass to try title, the person bringing the suit must have title to the land sought to be recovered. *Ramsey*, 313 S.W.3d at 505. *Id.* A plaintiff's right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary. *Id.* In a trespass-to-try-title action,

---

[2] In 2007, the Legislature amended Section 37.004 to permit a person to obtain a determination of the proper boundary line between adjoining properties. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 37.004(c)(West 2008). The instant case does not involve a boundary dispute so Section 37.004(c) is inapplicable.

the plaintiff is required to prove its title by proving (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations; or (4) prior possession which has not been abandoned. *Teon Management*, 357 S.W.3d at 728.

The Declaratory Judgments Act does not alter a trial court's jurisdiction. *See Texas Parks and Wildlife Department v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Rather, it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Id.*, *quoting Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 444 (Tex. 1993). Even though a litigant couches its requested relief in terms of declaratory relief, the underlying nature of the suit is not altered. *Sawyer Trust*, 354 S.W.3d at 388. The DJA specifies the types of issues that can be resolved by a declaratory judgment proceeding. Section 37.004, titled "Subject Matter of Relief", provides that a person interested under a deed may have determined any question of construction or validity arising under the instrument and obtain a declaration of rights, status, or other legal relations thereunder. TEX.CIV.PRAC.&REM.CODE ANN. § 37.004(a)(West 2008).

In their first amended petition, the Perriens' specifically sought an adjudication of their rights as the owners of the Property, and requested that the June 8, 1992 deed and the quitclaim deed recorded on October 15, 2008 be declared null and void, that the Perriens be declared the legal and equitable owners of the Property, and that the cloud on their title be removed. By requesting declarations that the June 8, 1992 deed and the quitclaim deed are void and that the Perriens are the rightful owners of the Property, the Perriens effectively alleged a trespass to try title claim. *See Parker v. Hunegnaw*, 364 S.W.3d 398, 402 (Tex.App.--Houston [14th Dist.] 2012, no pet.). We conclude that the trial court had subject matter jurisdiction of the Perriens'

claims, including the trespass to try title and suit to quiet title. The inclusion of the requests for declaratory relief did not deprive the trial court of subject matter jurisdiction. *See Teon Management*, 357 S.W.3d at 726 (holding that the trial court does not lose jurisdiction if a title dispute is erroneously filed as a declaratory judgment action). We overrule Issue One.

## RES JUDICATA AND COLLATERAL ESTOPPEL

In Issues Two and Four, Vernon challenges the legal and factual sufficiency of the evidence supporting the trial court's determinations related to res judicata and collateral estoppel. Res judicata, also known as claim preclusion, prevents the relitigation of a finally-adjudicated claim and related matters that should have been litigated in a prior suit. *State and County Mutual Fire Insurance Company v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Texas follows the transactional approach to res judicata. *State and County Mutual Fire Insurance*, 52 S.W.3d at 696; *Barr*, 837 S.W.2d at 630. This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit. *Id*. Res judicata bars assertion of a claim in a subsequent case when (1) there is a prior final determination on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on the same claims as were raised or could have been raised in the first action. *Travelers Insurance Company v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Vernon does not challenge the first element of res judicata. It is undisputed that the 205th District Court determined that Raymond W. Shaw owned 100 percent of the fee simple title to the property. Vernon instead challenges the second and third elements of res judicata. He argues that the evidence is insufficient to prove that he is in privity with a party to the 1992 suit

or to prove that the current suit is based on the same claims as were raised or could have been

raised in the 1992 suit. The trial court made the following pertinent findings of fact:

13. On August 27, 1992, the Judge of the 205th Judicial District Court of El Paso County, Texas, signed and entered its Judgment under Cause No. 92-7704 entitled 'Judy Paul v. Rene M. Vernon and Vera Shaw' that Raymond W. Shaw is the rightful owner of the Fee Simple Title to the property located at Tract 3-B-34, W.F. Hagan Survey No. 146 in El Paso County, Texas.

14. Rene M. Vernon was a party to those proceedings.

15. The docket sheet for Cause No. 92-7704 shows that citation was issued to Rene M. Vernon on June 30, 1992.

16. Rene M. Vernon is an owner and vice president of Mexada Corporation.

17. Mexada Corp. through its representative, Rene M. Vernon, was a party to those proceedings.

18. Defendant, Jerry Vernon is the father of Rene M. Vernon and owner and president of Mexada Corp.

19. The docket sheet for Cause No. 92-7704 shows that the oral telephonic deposition of Jerry Vernon was filed on August 25, 1992.

20. Defendant's deed dated June 8, 1992, which was recorded one year after the date of the Judgment, creates a cloud on Plaintiff's title.

21. After the Judgment was rendered, Mexada Corp. and Rene M. Vernon failed to remove the cloud on the subject real property.

22. On October 15, 2008 and after this lawsuit was filed, Mexada Corp. transferred this property by Quitclaim Deed to Jerry Vernon.

23. Plaintiffs have requested that Defendants remove the cloud on their title for the subject property and Defendants have failed and refused to do so.

24. Defendants' claim that either Mexada Corp. and/or Jerry Vernon are part owners of this property is slander to Plaintiffs' title in light of the Judgment.

The court also entered conclusions of law related to the res judicata and collateral

estoppel issues:

2. On August 27, 1992, the Judge of the 205th Judicial District Court of El Paso County, Texas, signed and entered its Judgment under Cause No. 92-7704 entitled

- 7 -

'Judy Paul v. Rene M. Vernon and Vera Shaw' that Raymond W. Shaw is the rightful owner of the Fee Simple Title to the property located at Tract 3-B-34, W.F. Hagan Survey No. 146 in El Paso County, Texas.

3. The 1992 Judgment recites that 'the parties appeared in person and by and through their attorneys of record, and announced to the Court that they have reached an agreed judgment in regard to the litigation pending before this Court, . . . .' The Judgment is *res judicata* as to the owner of the property.

4. Rene M. Vernon, Mexada Corp. and Jerry Vernon are in privity to each other and in the litigation under Cause No. 92-7704.

5. William (Bill) Perrien and Roxanne Perrien purchased the real property located at Tract 3-B-34, W.F. Hagan Survey No. 146 in El Paso County, Texas from Raymond W. Shaw.

6. Plaintiffs, William (Bill) Perrien and Roxanne Perrien are the owners of the real property.

7. Defendants are estopped from claiming ownership to the subject real property and are bound by the Judgment signed and entered by the Judge of the 205th Judicial District Court of El Paso County, Texas, under Cause No. 92-7704, on August 27, 1992 under the doctrines of *res judicata* and collateral estoppel.

### Standard of Review

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed for legal and factual sufficiency of the evidence by the same standards. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Stanley Works v. Wichita Falls Independent School District*, 366 S.W.3d 816 (Tex.App.--El Paso 2012, no pet. h.). Where, as here, the appellate record contains a reporter's record, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings. *Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex.App.--Dallas 2008, pet. denied); *Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). We review the trial court's legal conclusions *de novo*. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Vernon has not specifically challenged any of the trial court's findings of fact. Generally, attacks on the sufficiency of the evidence supporting findings of fact "must be directed at specific findings of fact, rather than at the judgment as a whole." *Arrellano v. State Farm Fire & Casualty Company*, 191 S.W.3d 852, 855 (Tex.App.--Houston [14th Dist.] 2006, no pet.) In a civil case, if the trial court's factual findings are unchallenged, as in this case, they are binding on the appellate court unless the contrary is established as a "matter of law," or there is "no evidence" to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). In other words, our review of unchallenged findings is restricted to whether the evidence is legally sufficient to support them.

A legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidences establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Stanley Works*, --- S.W.3d ----, 2012 WL 1422022 at *5. When conducting a legal sufficiency review, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 830; *Stanley Works*, 366 S.W.3d at 828. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827; *Stanley Works*, 366 S.W.3d at 828.

*Privity*

Vernon maintains that the Perriens failed to prove that he is in privity with a party to the

1992 suit and judgment because there is no evidence that Ms. Vernon was served with citation or filed an answer. The trial court expressly found that Mexada and Ms. Vernon were parties to the 1992 suit in the 205th District Court. Mexada has not appealed. The judgment and the trial court's determination that the 1992 judgment is res judicata are therefore final as to Mexada.

Gilbert Sanchez, the El Paso County District Clerk, testified that the entire file in cause number 92-7704 was destroyed in 2005 and his predecessor had failed to scan or microfiche the documents. The Clerk's Office had only the docket sheet and the trial court took judicial notice of it.[3] It reflects that the suit was filed on June 26, 1992, approximately seven weeks after Ms. Vernon sold the Property to Raymond W. Shaw and notified Judy Paul of the sale. Non-resident citation was issued to Ms. Vernon in Albuquerque, New Mexico, on June 30, 1992, but the docket sheet does not show that Ms. Vernon was ever served or that she filed an answer. A temporary restraining order was mailed to her on that same date. The docket sheet states that counsel for Vera Shaw took Jerry Vernon's deposition by telephone on August 25, 1992.

The record also includes a copy of the 1992 Judgment which reflects the style of the case as "Judy Paul, Plaintiff, v. Rene M. Vernon, and Vera Shaw, Defendants." The judgment recites that "the parties appeared in person and by and through their attorneys of record, and announced to the Court that they have reached an agreed judgment in regard to the litigation pending before this Court . . . . " The 205th District Court incorporated that agreement in the judgment. The parties agreed that Raymond W. Shaw is the rightful owner of the fee simple title of the Property and Judy Paul has no ownership interest in the Property. The agreed judgment also recited that all of the claims asserted by Paul against "other parties to this action" are dismissed without prejudice. Ms. Vernon is the only other party to the action. The judgment has signature lines for Vera Shaw, Raymond W. Shaw, and Judy Paul to approve as to form and substance, but it does

---

[3] The docket sheet is included in the clerk's record as an exhibit to the Perriens' motion for summary judgment.

- 10 -

not have a signature line for Rene M. Vernon.

Under the presumption of regularity of judgments, we presume recitations in the final judgment are correct absent any evidence to the contrary. *See Southern Insurance Company v. Brewster*, 249 S.W.3d 6, 12-14 (Tex.App.--Houston [1st Dist.] 2007, pet. denied). The judgment reflects on its fact that Rene M. Vernon was a party defendant and recites that the parties appeared in person and by and through their attorneys of record and announced they had reached an agreement judgment. These recitations are presumed to be correct absent evidence to the contrary. A docket-sheet entry cannot contradict or take the place of a written order or judgment. *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 (Tex.App.--Houston [1st Dist.] 2006, orig. proceeding). There is no contrary evidence. Vernon asserts, however, that the judgment's recitation that Paul's claims against the "other parties" were dismissed without prejudice shows that Paul non-suited her claims against Ms. Vernon, and therefore, Ms. Vernon was not a party to the judgment. There is no evidence in the record that Paul non-suited her claims as permitted by Rules 162 and 163 of the Texas Rules of Civil Procedure. The judgment instead recites that the parties had reached an agreement and the judgment reflected that agreement. The only conclusion to be drawn from the recitations in the judgment is that the parties' agreement included dismissal of Paul's claims against the "other parties". We conclude that the evidence is legally sufficient to support the trial court's finding that Rene M. Vernon was a party to the 1992 suit.

The next issue is whether Vernon was in privity with Ms. Vernon. The Texas Supreme Court has stated that people can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior

action.  *Amstadt v. U.S. Brass Corporation*, 919 S.W.2d 644, 653 (Tex. 1996).  We begin our privity analysis by examining the interests shared by the parties.  *See Amstadt*, 919 S.W.2d at 653.  Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation.  *Id.*  Simply put, both suits concern title to the Property.  In the weeks before the trial court entered the judgment awarding title of the property to Raymond W. Shaw, Ms. Vernon had transferred title to Mr. Shaw and Mr. Shaw had purportedly transferred a 90 percent interest to Mexada just a few weeks later.  At the time the Perriens filed suit, Mexada was asserting that it had a 90 percent interest in the Property, but Mexada transferred its interest to Vernon by quitclaim deed.  It is undisputed Ms. Vernon is an officer and director of Mexada and Vernon is likewise an officer of Mexada.  Each of them has acted as president of Mexada in this case:  Ms. Vernon filed an answer on behalf of Mexada and Jerry Vernon filed motions for continuance on behalf of the corporation.  The interests of Mexada and Vernon in the property could have been represented by Ms. Vernon in the 1992 suit.  The trial court correctly determined that Vernon and Mexada are in privity with Ms. Vernon.

*Capacity*

Vernon also complains that res judicata cannot be applied in this case because Ms. Vernon was sued in her individual capacity in the 1992 suit rather than as a representative of Mexada Corporation.  The record before us is silent as to the capacity in which Ms. Vernon was sued in 1992 because the District Clerk destroyed the entire record in 2005.  Neither the docket sheet nor the judgment affirmatively reflects in what capacity Ms. Vernon was sued.  In the absence of any evidence supporting this argument, nothing is presented for our review.

*Same Claims*

Vernon next argues that the evidence is insufficient to prove that the second action is

based on the same claims as were raised or could have been raised in the first action. Given that the 205th District Court entered a judgment that Raymond Shaw owned the fee simple title to the Property, the 1992 suit clearly involved a dispute regarding ownership of the Property. Vernon concedes that Rene Vernon, as an officer of Vernon, could have raised in the first suit the claim that Raymond Shaw did not own a 100 percent interest in the Property because he had transferred a 90 percent interest in the Property to Mexada in June 1992. Vernon argues that the same claim could not be raised in the instant case because Mexada quitclaimed its interest to Vernon. This argument is without merit. The Perriens initially brought this suit seeking to have the June 8, 1992 warranty deed from Raymond Shaw to Mexada declared void and removed as a cloud on their title. Mexada's assertion of an interest in the property is the same claim which Ms. Vernon, on behalf of Mexada, could have brought in the 1992 suit.

A quitclaim deed is a deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid. BLACK'S LAW DICTIONARY 477 (9th ed. 2009); *see Rogers v. Ricane Enterprises, Inc.,* 884 S.W.2d 763, 769 (Tex. 1994); *Porter v. Wilson*, 389 S.W.2d 650, 655-56 (Tex. 1965). A quitclaim deed is not a conveyance or a muniment of title. *Rogers*, 884 S.W.2d at 769. By itself, it does not establish any title in those holding the deed, but merely passes the interest of the grantor in the property. *Id.* In other words, Mexada gave Vernon only the interest it held and did not establish any title in him. To prevail in this case, the Perriens only had to show that Mexada's interest was invalid or unenforceable because if Mexada's title failed, then Vernon had no interest. Thus, the validity of Mexada's interest in the property remained an issue in the case.

The trial court correctly concluded that Mexada and Vernon are estopped from claiming ownership of the property and are bound by the 1992 judgment under the doctrine of res judicata.

It is therefore unnecessary to address Vernon's arguments related to collateral estoppel. Issues Two and Four are overruled.

## TRESPASS TO TRY TITLE

In Issues Three, Five, and Eight, Vernon contends that the evidence is legally and factually insufficient to support the trial court's determination that the Perriens are the rightful owners of the Property or that their title is superior to Vernon's title. A trespass-to-try-title action is a procedure by which rival claims to title or right of possession may be adjudicated. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003). To recover in a trespass-to-try-title action, the plaintiff is required to prevail on the superiority of his own title, not on the weakness of the defendant's title. *Rogers v. Ricane Enterprises, Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). The plaintiff may recover (1) by proving a regular chain of conveyances from the sovereign, (2) by establishing superior title out of a common source, (3) by proving title by limitations, or (4) by proving title by prior possession coupled with proof that possession was not abandoned. *Id*. At 768. The second means of establishing title is at issue here. To prove a *prima facie* case of common source, the plaintiff must connect his title and the defendant's title through complete chains of title to the common source and then show that his title is superior to the one that the defendant derived from the common source. *Id*.

We will first examine the legal sufficiency challenge. On appeal, a legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.

2005); *Escalante v. State Office of Risk Management*, 355 S.W.3d 341, 344-45 (Tex.App.--El Paso 2011, no pet.).

The Perriens offered evidence that they derived their title to the Property through Raymond W. Shaw in 2000. Vernon obtained his interest in the Property by means of the quitclaim deed he executed as president of Mexada after this suit was filed. Mexada obtained its 90 percent interest in the property by means of the tenants in common warranty deed executed by Raymond W. Shaw on June 8, 1992. The trial court determined, however, that the June 8, 1992 deed is void and Mexada is estopped from claiming an interest in the Property. Mexada has not appealed so the trial court's judgment is final with respect to Mexada's interest arising out of the June 8, 1992 deed. Further, we have overruled Vernon's challenges to the trial court's determination on the issue of res judicata. Accordingly, the evidence is legally sufficient to prove that the Perriens' title is superior to that of Vernon.

When the appellant challenges the factual sufficiency of an adverse finding on which the other party had the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Escalante*, 355 S.W.3d at 345; *Texas Property & Casualty Guaranty Association v. National American Insurance Company*, 208 S.W.3d 523, 542 (Tex.App.--Austin 2006, pet. denied). We will consider, weigh, and examine all of the evidence in the record, both in support of, and contrary to, the finding. *Escalante*, 355 S.W.3d at 345; *Insurance Network of Texas v. Kloesel*, 266 S.W.3d 456, 470 (Tex.App.--Corpus Christi 2008, pet. denied). The finding will be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Escalante*, 355 S.W.3d at 345. Having considered all of the evidence, we conclude that the trial court's determination is not contrary to the overwhelming weight of the evidence.

The Perriens' pleadings also alleged a suit to quiet title or a suit to remove a cloud from title and the trial court made findings relevant to that cause of action. In the event the dispute should have been litigated as a suit to quiet title rather than as a trespass to try title, we note that Vernon has not raised any issues on appeal challenging that portion of the judgment. A suit to remove cloud from title or suit to quiet title is different from an action in trespass to try title. *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex.Civ.App.--Corpus Christi 1977, writ ref'd n.r.e.). A trespass-to-try-title action is statutory and accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy. *Id.* A suit to quiet title relies on the invalidity of the defendant's claim to the property. *Essex Crane Rental Corporation v. Carter*, --- S.W.3d ---, 2012 WL 1071231 at *19 (Tex.App.--Houston [1st Dist.] 2012, pet. denied); *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex.App.--San Antonio 2009, pet. denied). It exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Essex Crane*, --- S.W.3d ---, 2012 WL 1071231 at *19; *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex.App.--Houston [1st Dist.] 2009, pet denied). A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property. *Essex Crane*, --- S.W.3d ---, 2012 WL 1071231 at *19; *Hahn*, 321 S.W.3d at 531. The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *Essex Crane*, --- S.W.3d ---, 2012 WL 1071231 at *19. The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *Essex Crane*, --- S.W.3d ---, 2012 WL 1071231 at *19; *Hahn*, 321 S.W.3d at 531. The plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove. *Essex Crane*, --- S.W.3d ---, 2012 WL 1071231 at *19; *Hahn*, 321 S.W.3d at 531. The elements of the

cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. National Bank Association v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507 at *3 (Tex.App.--Houston [1st Dist.] 2011, no pet.).

Given that Vernon has not raised any issues on appeal related to the portion of the trial court's judgment granting relief on the Perriens' suit to quiet title, we will not review the sufficiency of the evidence supporting the elements of that cause of action. Issues Three, Five, and Eight are overruled.

## ATTORNEY'S FEES

In Issue Six, Vernon contends that the trial court abused its discretion by awarding the Perriens attorney's fees on their declaratory judgment action. He relies on a case holding that attorney's fees are not recoverable in a declaratory judgment action where the claim is properly a trespass-to-try-title action. *See Ely v. Bailey*, 959 S.W.2d 723, 727 (Tex.App.--Austin 1998, no pet.). It is undisputed that the Perriens sought to recover attorney's fees based on the Declaratory Judgments Act. The record reflects that Vernon never objected in the trial court that the Perriens could not recover attorney's fees because the suit was not properly a declaratory judgment action but rather was a trespass-to-try-title action. Vernon failed to preserve this argument for review. *See Krabbe v. Anadarko Petroleum Corporation*, 46 S.W.3d 308, 320-21 (Tex.App.--Amarillo 2001, pet. denied).

## EXEMPLARY DAMAGES

In Issue Seven, Vernon contends that the evidence is legally and factually insufficient to support the trial court's award of exemplary damages against him. Section 41.003 of the Texas Civil Practice and Remedies Code provides that exemplary damages may be awarded in cases where a claimant proves by clear and convincing evidence that the harm resulted from fraud, malice, or gross negligence. TEX.CIV.PRAC.&REM.CODE ANN. § 41.003(a)(1)-(3)(West Supp. 2011). The Perriens alleged malice as a basis for recovering exemplary damages. Malice is defined as a specific intent by the defendant to cause substantial injury or harm to the claimant. TEX.CIV.PRAC.&REM.CODE ANN. § 41.001(7). Specific intent means that the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it. *Seber v. Union Pacific Railroad Company*, 350 S.W.3d 640, 654 (Tex.App.--Houston [14th Dist.] 2011, no pet.), *citing Reed Tool Company v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985). Malice may be shown by direct or circumstantial evidence. *Seber*, 350 S.W.3d at 654.

The Civil Practice and Remedies Code provides that "clear and convincing means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.CIV.PRAC.&REM. CODE ANN. § 41.001(2). Given that there is an elevated standard of proof, the standard of appellate review is likewise elevated. *Southwestern Bell Telephone Company v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). Under this standard, we look at all the evidence in the light most favorable to the finding, taking into account contrary undisputed facts, to determine whether a reasonable trier of fact could have formed a firm belief or conviction regarding malice. *Qwest International Communications, Inc. v. AT & T Corporation*, 167 S.W.3d 324, 326 (Tex. 2005).

If we determine after reviewing the evidence that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Southwestern Bell*, 164 S.W.3d at 627.

In reviewing a factual sufficiency challenge to an adverse finding on which the other party had the burden of proof, as is the case here, we will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding. *See Dow Chemical Company v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We give due consideration to any evidence the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

The evidence at trial revealed that Vernon, in his capacity as Mexada's president, executed a quitclaim deed to the Property after this suit was filed. Vernon was not a party to the suit at that time, but he had knowledge of the suit and he had received a copy of the petition.[4] Thus, Vernon knew that the Perriens were alleging they had made substantial improvements to the property, they had paid the taxes on the property for a number of years, and Mexada's adverse claim was preventing the Perriens from selling the property. He also knew that they were relying on the 1992 judgment to show that Raymond Shaw owned the property when he sold it to them and the Perriens were asserting that Mexada was estopped from claiming an interest in the Property by virtue of that 1992 judgment. Knowing these facts, Vernon executed

---

[4] Vernon sent a handwritten letter to the trial court dated March 7, 2008 stating that he was the president of Mexada and he had received the petition filed in this case.

the quitclaim deed. Mexada and Vernon offered no evidence at trial that any legitimate basis existed for the quitclaim deed. A reasonable trier of fact could find that Vernon and Mexada executed the quitclaim deed for the sole purpose of further clouding the Perriens' title and causing them substantial harm. This evidence is legally sufficient to permit a reasonable trier of fact to form a firm belief or conviction regarding malice.

Turning to the issue of factual sufficiency, we note that Vernon does not point to any contrary or disputed evidence that the trial court, as factfinder, could not have credited in favor of a malice finding. We have examined all of the evidence in the record and find that it is factually sufficient to support the trial court's finding of malice. We overrule Issue Seven and affirm the trial court's judgment.


October 24, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice


Before McClure, C.J., Chew, C.J. (Senior), Salas-Mendoza, Judge
Chew, C.J. (Senior), sitting by assignment
Salas-Mendoza, Judge, sitting by assignment