

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| JUAN HEREDIA AND FLOR FLORES, | § | No. 08-15-00327-CV |
|  | § | Appeal from |
| Appellants, | § | 327th District Court |
| v. | § | of El Paso County, Texas |
| MICHAEL ZIMPRICH, | § | (TC # 2011-344) |
| Appellee. | § |  |

## DISSENTING OPINION

The majority characterizes this case as a dispute solely about a boundary location between two adjoining properties. I agree in part, but I would add that--more than a dispute over boundary--the parties here are disputing title and possessory rights of a strip of property in a case complicated by two additional factors. First, there were fraudulent misrepresentations made to obtain signatures on documents pertinent to the case: (1) a correction deed; and, (2) an unrecorded subdivision plat. And, second, later-dated correction instruments were used to establish the chains of title of the adjoining properties. Because I conclude that Zimprich failed to establish superior title over the disputed property--and neither he nor his predecessors ever possessed or exercised peaceable enjoyment over it--I would not affirm the judgment in his favor for trespass to try title. Instead, I would reverse. Respectfully, I dissent.

**Factual Background**

The record shows that the adjoining properties subject of this suit were owned at one time by Antonio Martinez as an undivided tract of land totaling .6039 acres in size, described as Tract 5V, Block 27, Socorro Grant, El Paso County. In May of 2005, Martinez divided ownership of the tract by conveying a smaller-sized commercial parcel (.2830 acres) to Carolina Aleman and retained for himself ownership of a larger-sized residential parcel (.3209 acres). In April 2006, Martinez then conveyed his residence to Marcella Betts. Ownership of each parcel soon turned over once again from Aleman and Betts to others. As between the three principals involved in the underlying suit, the Heredias acquired their residential parcel first, followed by third-party defendant Daniel Luevano, who acquired the adjoining commercial property, then lastly, Zimprich acquired from Luevano, but only after certain intervening events occurred pertaining to issues raised by a title company.

By means of a Warranty Deed dated February 6, 2007, Marcella Betts conveyed to the Heredias the slightly-larger-residential portion of the tract, or .3209 acres of property, described by metes and bounds as having a width of nearly 120 feet. ("original deed"). Shortly thereafter, by means of a Deed In lieu of Foreclosure dated February 19, 2007, third-party defendant and creditor Daniel Luevano acquired ownership of the smaller-commercial portion of the tract, or .2830 acres of property, from Carolina Aleman who had by then defaulted on her required payments. After these two transactions, intervening events occurred before Zimprich eventually acquired his ownership from Luevano.

Once Aleman defaulted, Luevano soon began negotiating with Zimprich who showed interest in buying the commercial parcel. Zimprich obtained a loan and together with Luevano they contacted a title company to close their transaction. At that point, however, they encountered

2

difficulties with obtaining a title policy. Luevano testified that the property lacked a recorded subdivision and the title company would not close without one. The title company asked him to get a survey. Although he could have obtained a survey, Luevano described how he located a copy of an existing survey and used it instead. He testified, however, that the title company required a subdivision plat to be recorded. At trial, Luevano identified the subdivision plat as the survey he had located, and it was admitted without objection.

On its face, the plat shows that Surveyor Carlos Jimenez certified he had prepared the plat and description of the adjoining properties, described therein as the "Dini Rozi Subdivision," from a survey of the property made on the ground by him or under his supervision. Although Jimenez' certification had a typed date of March 20, 2006, he delayed signing the plat until July 31, 2007, just over a month after its approval on May 23, 2007, by the City of Socorro Planning and Zoning Commission. On August 1, 2007, Luevano testified he approached the Heredias with the unrecorded plat and obtained their two signatures on an "Owner's Dedication, Certification and Attestation." Two days later, on August 3, 2007, the plat was approved by the Mayor of the City of Socorro. Eventually, it was recorded in the records of the County of El Paso on December 17, 2007.

In addition to the plat, Luevano testified the title company contacted him about other recording issues. From this contact, he learned there was something wrong and corrections needed to be done. Specifically, he needed metes and bounds corrections. As best he could recall, he received correction deeds from the title company to correct previous transactions from Martinez to Aleman and from Aleman to Luevano, and on the other property from Martinez to Betts and from Betts to the Heredias. Luevano described that the correction deeds came after the "subdivision correction." At trial, the correction deeds were admitted without objection and

3

showed the following dates: the correction deed from Martinez to Aleman and from Martinez to Betts were signed on October 3, 2007; and, a correction affidavit attached to the deed from Aleman to Luevano was signed by an escrow officer of the title company on October 26, 2007.

As for the transaction from Betts to the Heredias, Luevano testified he again met with the Heredias to obtain their signature on a correction deed. He testified, "I told [the Heredias] in order to clear this up so it would be equanimity, equal, and to have everybody warm and fluffy, you know, we had to do this; but I did explain to him it was to go ahead and do this." He said he assured the Heredias that the deed was meant "[t]o make sure that everybody wound up with what it was supposed to be." At the time, Luevano knew the correction deed would match the subdivision plat. Thus, on October 30, 2007, the Heredias signed a purported correction deed expressly revising their original deed dated February 2007. On its face, the revised deed provided the following explanation:

> This deed is made as a correction deed titled 'Warranty Deed to Trustee Under the 576 Dini Rozi Land Trust' dated April 26, 2006 and recorded as Document #20060048926 of the real property records of El Paso Count, (sic) Texas, to correct the following incorrect information: The metes and bounds are stated incorrectly. The correct metes and bounds are attached as Exhibit 'B'. Other than the stated correction, this deed is intended to restate in all respects the Corrected Deed, and the effective date of this correction deed relates back to the effective date of the Correction Deed.

Exhibit "B," which is incorporated to the deed by reference, is a survey titled "Metes and Bounds Description, 576 Dina (sic) Rozi Drive," dated June 5, 2007, by Carlos M. Jimenez, Registered Professional Land Surveyor.

At trial, although he acknowledged signing the correction deed, Juan Heredia asserted that Luevano never explained that it essentially conveyed away over ten feet of residential property belonging to him and his wife. The correction deed reduced the width of the Heredia's property from 120 feet to 109.45 feet--or, 10.55 feet of property traversing the length of the common

4

boundary. In total acreage, the purported change reduced the Heredia's parcel from its original description of 0.3209 acres, to a corrected description of 0.2941 acres. Based on the purported correction, the ten-foot-wide strip of land was no longer included in the Heredias record of property ownership. The strip of land, however, remained in their continuous possession as it was situated inside the cinder-block wall they had built on their lot.

After all the correction deeds were signed, Luevano testified he was able to close on the sale of his property to Zimprich. On January 17, 2008, Luevano conveyed to Michael Zimprich an interest in his commercial parcel by Warranty Deed with Vendor's Lien. Rather than describe the property in metes and bounds, the Warranty Deed incorporated by reference the recorded plat and referred to the property for the first time as Lot 1, Block 1, of the Dini Rozi Subdivision.

Over three years later, on January 27, 2011, Zimprich filed suit for trespass to try title against the Heredias. From the suit itself, the Heredias first learned that Zimprich raised an issue regarding the location of the boundary between the adjoining properties. Following a general denial, the Heredias filed a counter-petition in which they asserted common law fraud, civil conspiracy, and fraud by non-disclosure against Luevano and Zimprich, and a cause of action for suit to quiet title. The Heredias asserted that Luevano had committed fraud by inducing them to sign documents that failed to inform them they were effectively divesting a portion of land from their homestead. Later, the fraud and conspiracy claim against Zimprich was disposed of by an agreed order.

Following a bench trial, the trial court entered a judgment for Zimprich on his claim for trespass to try title. The trial court also ordered Zimprich to remove and rebuild the existing wall to the corrected property line and to pay for costs associated with relocating water, sewer, and electric lines that belonged to the Heredias' property. Zimprich was also ordered to pay for costs

5

of landscaping on the parcel of land that was in dispute. On the fraud claim against third-party Luevano, the trial court entered judgment in favor of the Heredias and ordered that Luevano pay damages in the amount of $11,250. Although Zimprich initiated an appeal, he soon dismissed it voluntarily. Ultimately, only the Heredias' assigned error to the trial court's ruling.

### A. Correction Deed Procured by Fraud and Subdivision Plat

The majority concluded as follows: (1) that the evidence supports the trial court's determination that the Heredias signed the correction deed, and (2) they acquiesced to the change in the metes and bounds of their homestead by signing the plat, and (3) they showed further agreement with the boundary change by signing a new Deed of Trust in 2015 consistent with the same dimensions. I view the Heredias signing of these documents differently from the majority.

Given that the trial court entered a judgment of fraud in favor of the Heredias, I disagree with the majority as to the impact of Luevano's fraud on both the correction deed and the subdivision plat. Without question, the trial court concluded that Luevano had committed fraud by failing to inform the Heredias that instruments they signed "convey[ed] land away from their homestead." Although the Heredias openly acknowledged having signed both the correction deed dated October 30, 2007, and the subdivision plat recorded December 2007, the correction deed and plat were not signed with intention to convey property. Regarding the Heredias' arguments, in Issue Five and Seven, they complain that even though the trial court entered a judgment of fraud in their favor, it erred in accepting both the correction deed and the plat as being valid instruments. On these arguments, I agree with the Heredias.

In a situation of fraud, a party may admit that his or her signature is genuine but nonetheless allege that the signature was procured through deception. In Texas, an instrument procured by fraud is voidable at the election of the defrauded party. *Nobles v. Marcus*, 533 S.W.2d 923, 926

6

(Tex. 1976). Although the instrument is initially effective as a conveyance of legal title, a party who is defrauded may seek relief through a judicial proceeding to set the instrument aside. *Lighthouse Church of Cloverleaf v. Texas Bank*, 889 S.W.2d. 595, 602 (Tex.App.--Houston [14th Dist.] 1994, writ denied). To set aside title, suit must be brought within a four-year statute of limitations. TEX.CIV.PRAC. & REM. CODE ANN. § 16.004(a)(4)(West 2002); *Ford v. Exxon Mobil Chemical Co.*, 235 S.W.3d 615, 617 (Tex. 2007); *Goodwin v. City of Dallas*, 496 S.W.2d 722, 723 (Tex.Civ.App.--Waco 1973, no writ). At the time the Heredias filed their counter-claim, they asserted that in October 2007, Luevano procured their signature on a correction deed affecting their property. By its judgment, the trial court granted relief on the Heredias' claim of fraud by non-disclosure. Because no party challenged the court's judgment, it became final and unreviewable. *Vernon v. Perrien*, 390 S.W.3d 47, 58 (Tex.App.--El Paso 2012, pet. denied) (recitations in a final judgment are considered correct under the presumption of regularity).

Regardless of whether the Heredias in fact signed the correction deed, I would conclude as a matter of law that it being an instrument procured by fraud, the correction deed did not replace the original warranty deed of the Heredias except as to any party who qualified in the interim as a purchaser for value without notice. For the period during which the deed remained voidable--and considering that it affected adjoining property--a bona fide purchaser for value would be excepted from the first-in-time principle. *Diversified, Inc. v. Hall*, 23 S.W.3d 403, 406 (Tex.App.--Houston [1st Dist.] 2000, pet. denied) ("The holder of a later title will have priority over the holder of the earlier title once it is shown that the holder of the later title acquired it as a bona fide purchaser for value without notice of the earlier interest."). Because Zimprich acquired title from Luevano in the interim period, I would next consider whether he qualified as a bona fide purchaser for value without notice of the discrepancy.

Here, the record includes testimony from Luevano but not from Zimprich. Luevano testified that once Aleman defaulted on her payments he started looking for an investor to buy out his interest. Luevano met Zimprich and they were soon ready to close on a sale of his ownership when the title company raised issues about the title of the property. Luevano testified he then approached the Heredias on August 1, 2007. From this record, it shows that Zimprich's knowledge of a discrepancy with the title of the commercial parcel came to light not only before Luevano defrauded the Heredias with a purported correction instrument dated October 30, 2007, but also before he acquired title to the property in January 2008. Indeed, Zimprich's typed name and address appear on the face of the correction deed signed by the Heredias as the party to whom the deed should be returned after recording. Thus, I would conclude that Zimprich had notice of the boundary discrepancy months before he acquired his interest from Luevano. Consequently, Zimprich did not qualify as a bona fide purchaser for value who would take title of the property during the period the correction deed signed by the Heredias remained voidable. *See* TEX.PROP. CODE ANN. § 5.030(b) (West 2014).

As for the plat, in Issue Seven, the Heredias argued on appeal that the trial court erred in treating the plat as an effective instrument of conveyance. The majority rejected this characterization of the trial court's ruling. Instead, the majority concluded that Zimprich relied on the plat to establish the correct boundary between the adjoining properties. Because the plat was recorded well after the Heredias had originally been conveyed their property, I disagree that it provides evidentiary value to support Zimprich's claim of ownership over the disputed strip of property.

Unlike a deed, a plat merely serves as an aid to describe a property location and is not itself an instrument of conveyance. *Fuentes v. Hirsch*, 472 S.W.2d 288, 293 (Tex.Civ.App.--El Paso

8

1971, writ ref'd n.r.e.); *see Pritchard v. Burnside*, 140 Tex. 212, 167 S.W.2d 159, 162 (1943). As parol evidence, the plat serves to identify the property and it is admissible so long as a deed contains a nucleus of a description. *Duncan v. F-Star Mgmt.*, L.L.C., 281 S.W.3d 474, 478 (Tex.App.--El Paso 2008, pet. denied)("Parol evidence may be used to clarify or explain the agreement, but not to supply the agreement's essential terms"). Like a deed, however, a plat may be amended to correct for errors. TEX.LOC.GOV'T CODE ANN. § 212.016 (a) (1) (West 2016) (a municipal authority responsible for approving plats may issue an amending plat if the amending plat is signed by the applicants and is amended to correct an error in course or distance). Regarding ownership, not all plats provide evidentiary value even though approved and recorded. *State v. Curtis*, 474 S.W.2d 635, 637 (Tex.Civ.App.--San Antonio 1971, no writ)(holding plat of a proposed subdivision was nothing more than a paper subdivision).

At trial, Zimprich argued that the recorded plat supported his later-acquired ownership of the disputed ten-foot-wide strip of property. In part referring to the plat, the trial court concluded that ownership of the disputed strip of property belonged to Zimprich and the wall the Heredias had built was then located on Zimprich's property. Although the trial court acknowledged the plat was not yet recorded when the Heredias first acquired title to their property, it found, nonetheless, that the Heredias later signed it, on August 1, 2007, and by doing so, they agreed to the boundaries therein depicted. Finding #8 stated, "[T]his subdivision plat lists the distance of the front of Mr. Heredia's lot as 109.45 feet and the back as <u>109.45</u> feet as opposed to the distances in the deed of <u>117.52</u> feet and <u>120.00</u> respectfully." The trial court also noted that the Heredias had notice of a discrepancy in the plat, yet they later took out a new loan that further relied on the plat to describe their property. The majority affirmed the trial court and similarly concluded that Zimprich relied on the plat to establish the correct boundary between the adjoining properties.

9

First, for the following two reasons, I disagree with the majority's conclusion that the Heredias acquiesced to the change in the metes and bounds by signing the plat: (1) the instrument itself cannot convey property; and, (2) the signatures of the Heredias were procured by Luevano's deception. Analogous with the correction deed, I would conclude that having been procured by fraud, the plat signed by the Heredias does not operate as a form of acquiescence of the boundaries of the property as therein depicted. *See Fuentes,* 472 S.W.2d at 293; *Cf. Nobles*, 533 S.W.2d at 926. Second, as for ownership, even Zimprich concedes in his live pleading that the plat was recorded after the Heredias had already acquired their property and it was the later-created plat that failed to match with the ownership of both the Heredias deed and the deed of Luevano. In short, because both the purported correction deed and the plat were procured through Luevano's deceptions, I would void the purported correction deed and amend the plat. Accordingly, I would sustain Issues Five and Seven.

**B. Trespass to Try Title Claim**

In his suit for trespass-to-try title, Zimprich alleged there existed a dispute as to the "true location of the boundary line" between the adjoining properties as described by reference to the incorporated plat. By his suit, Zimprich alleged he was out of possession of a strip of property that was wrongfully being possessed by the Heredias since March of 2007. Thus, he alleges he was denied possession of the property even before he acquired ownership of the adjoining property in January 2008. Aside from the issue of timing, Zimprich alleged that the size of his property should be larger, as reflected in Lot 1 of the plat, and the size of the Heredias property should be smaller, as reflected in Lot 2 of the plat.

On appeal, the Heredias asserted in Issue Four that Zimprich failed to prove his trespass to try title claim. Deciding that the case involved a mere boundary dispute that was not tied into a

10

dispute over title, the majority concluded that the formal proof requirements ordinarily required of a trespass to try title claim were relaxed as to Zimprich's claim of trespass. Thus, the majority concluded that Zimprich's recorded deed was sufficient to show his interest in the disputed property without having to prove a formal chain of superior title. I disagree with the majority's conclusion.

Pursuant to Section 22.001 of the Texas Property Code, a trespass to try title action may be brought to determine title to lands, tenements, or other real property. TEX.PROP. CODE ANN. § 22.001 (West 2014). A trespass to try title suit "is the exclusive method in Texas for adjudicating disputed claims of title to real property." *Texas Parks & Wildlife Dept. v. Sawyer Tr.*, 354 S.W.3d 384, 389 (Tex. 2011). Actions under this statute "involve detailed pleading and proof requirements." *Lance v. Robinson*, 543 S.W.3d 723, 735 (Tex. 2018) (quoting *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)). The statute is used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. *Martin*, 133 S.W.3d at 265.

A successful trespass to try title action establishes the validity of the plaintiff's claim of title and his or her possession of the real property interest at issue. *See Rogers v. Ricane Enterprises, Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *Vernon v. Perrien*, 390 S.W.3d 47, 54 (Tex.App.--El Paso 2012, pet. denied). By choosing one of four alternative means, a plaintiff may establish superior title by showing: "(1) title emanating from the sovereignty of the soil, (2) a superior title in itself emanating from a common source, (3) title by adverse possession, or (4) title by earlier possession coupled with proof that possession has not been abandoned." *Hall*, 23 S.W.3d 403, 406; *Rogers,* 884 S.W.2d 763, 768. To succeed, the plaintiff must recover upon the strength of his own title and may not rely on the weakness of the defendant's title. *Rogers,* 884 S.W.2d at 768. "If the plaintiff under the circumstances fails to establish his title, the effect of a

11

judgment of take nothing against him is to vest title in the defendant." *Hejl v. Wirth*, 161 Tex. 609, 343 S.W.2d 226 (Tex. 1961).

The majority opinion relies on both *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004), and *Plumb v. Stuessy*, 617 S.W.2d 667, 668 (Tex. 1981), in reaching its conclusion that Zimprich's claim could be established without need of establishing superior title. I disagree. In *Martin,* the Texas Supreme Court reviewed a case in which the parties' argued about whether the case simply involved a boundary dispute or whether it necessarily required determination of owners' substantive title rights. *Id*. at 266. In *Martin*, one party had argued the trespass to try title action was necessarily implicated considering that both parties were asserting competing claims of ownership to the same thirty-foot strip of property. *Id*. The other party argued, in contrast, that the boundary dispute was brought simply as an action for declaratory judgment. *Id*. Notably, the parties had stipulated that their respective chains of title did not overlap. *Id*. At the onset, *Martin* recognized that if a distinction existed in the case, it would have impacted the jurisdictional and evidentiary requirements. *Id*. After reviewing precedents, however, the Supreme Court rejected the overly broad argument that a substantive distinction existed with title actions and boundary disputes. *Id*. at 267. *Martin* stated, "questions of boundary are never the subjects of litigation within themselves, but become so only when some right or title is thought to depend on their determination [ ]." *Id.* at 267 (quoting *Freeman v. McAninch*, 87 Tex. 132, 136, 27 S.W. 97, 98 (1894)). Thus, *Martin* concluded that "[a] boundary determination necessarily involves the question of title, else the parties would gain nothing by the judgment." *Id.* (citing *Freeman*, 27 S.W. at 99).

Near its conclusion, however, *Martin* then cited *Plumb v. Stuessy*, 617 S.W.2d 667, 668 (Tex. 1981), for the proposition that "formal proof requirements do not apply in boundary disputes

12

when there would have been no case but for the question of boundary." *Id*. at 268. Like in *Martin*, the parties in *Plumb* were not disputing ownership of tracts of adjoining land. *Plumb*, 617 S.W.2d at 669. Instead, the case involved the use of a lane and dispute over a fence. *Id*. The parties in *Plumb* lived peaceably on their respective land until a question arose over a boundary and possibly involved questions of title. *Id*. Based on those circumstances, *Plumb* concluded there was no need for the claimant to establish his superior title by a formal trespass to try title action or thereafter risk losing title to his property. *Id*. Despite the relaxed standard of proof, however, the claimant of *Plumb* successfully proved record title to two tracts of land and additionally showed that his predecessors were in actual possession of the lane for many years prior. *Id.* Because the claimant's pleading had alleged that his predecessors had owned the land for over fifty years and sought an injunction to prevent relocation of a fence, the Supreme Court concluded the lower courts had erred in construing the claimant's cause of action too narrowly as a trespass to try title suit. *Id*.

Here, the circumstances are factually inverse from *Plumb*, as neither Zimprich nor his predecessors had possession of the strip of land in dispute. Plainly, Zimprich's claim is not based on an earlier-in-time conveyance. Instead, in his second amended petition, Zimprich essentially acknowledged by inference that the Heredias had earlier-in-time ownership of the strip of property. Attaching the Heredias' original deed to his petition, Zimprich admitted they were originally conveyed property described by the deed as a .3209-acre portion of Tract 5V, and more particularly described by metes and bounds in a survey incorporated by the deed, as having a maximum width of approximately 120 feet. Moreover, by his pleading, Zimprich acknowledged that the Heredias constructed a "[wall] along the south property line of their property as purported in the [2007 Warranty Deed]."

Unlike in *Plumb*, the basis of Zimprich's ownership claim arises from the later-in time

13

documents presented by Luevano. Zimprich's petition asserts that "the land purported to be conveyed by the Deed did not match a subdivision plat of Tract 5V that was filed with the city of Socorro (a copy attached as Exhibit 'B' and incorporated by reference) that was also signed by Defendants." The plat attached to the petition provided for a maximum width of 109.45 feet, and showed it was approved and recorded several months after the Heredias' original deed. Thus, to assert his superior claim, Zimprich then alleged the Heredias signed a correction deed and this deed, in turn, divested their ownership in that it "moved the [Heredias'] south boundary line approximately ten feet north."

At trial, the record shows that Zimprich chose the second means of proving a claim--that is, proving by a preponderance of evidence that he held a superior title emanating from a common source. Under these circumstances, a prima facie case required Zimprich to connect his own title and the Heredias' title through complete chains of title to their common source, then, from there, compare the respective chains of title and show which title was superior. *See Rogers*, 884 S.W.2d at 768. With Antonio Martinez having once owned both properties of the Dini Rozi subdivision, there is no dispute that he qualified as the common source. *See id.*

To establish his burden of proof, Zimprich relied on three types of evidence. First, he admitted purported correction deeds from his own chain of title (Martinez-Zimprich), and a like series of correction deeds for the Heredias' adjoining chain of title (Martinez-Heredias). Second, he admitted the subdivision plat approved by the City of Socorro on August 3, 2007. Third, he admitted a deed of trust dated May 8, 2015, in which the Heredias' refinanced their debt and conveyed a security interest in their property to their lender. The majority found this evidence to be legally sufficient to establish Zimprich's interest in the disputed parcel, and to establish the boundary line between the properties. For the following reasons, I disagree.

14

Regarding correction instruments, the Texas Property Code permits three types of changes: (1) "a nonmaterial change that results from a clerical error," (2) "a nonmaterial change that results from an inadvertent error," and (3) "a material correction." TEX.PROP. CODE ANN. §§ 5.028(a), 5.028(a-1), and 5.029 (West 2014). Pursuant to Section 5.029(a), a correction that adds or removes land to a conveyance that correctly conveyed other land is a material correction. *Id.* § 5.029(a). Unless rebutted, section 5.030(b) provides that "[a] correction instrument replaces and is a substitute for the original instrument." *Id.* § 5.030(b). Pursuant to Section 5.031, a court may render a final judgment determining that a correction instrument does not substantially comply with section 5.028 or 5.029. *Id*. § 5.031.

For proof of ownership of the disputed strip of property, Zimprich relies on multiple instruments to establish the two chains of title tracing ownership of the adjoining properties back to Antonio Martinez, the common source. Because Zimprich acknowledged that the Heredias were originally conveyed the disputed strip of property, to succeed on his claim, Zimprich's proof must essentially remove the strip of property from the Heredias' side of the chain and simultaneously add it to his own chain of title. To remove property from the Heredias, Zimprich would need to show that Martinez conveyed the disputed land to Zimprich's side of the chain of title by an earlier-in-time conveyance. An earlier title emanating from a common source is recognized as being a better title and superior to others. *Casstevens v. Smith*, 269 S.W.3d 222, 235 (Tex.App.--Texarkana 2008, pet. denied) (citing *Hall,* 23 S.W.3d at 406). Based on the record, I would conclude that Zimprich failed to establish substantial compliance with the correction statute. *See* TEX.PROP. CODE ANN. § 5.029.

To remove property from one side of the chain and add it to the other, Zimprich relies on two correction warranty deeds purportedly signed on October 3, 2007, from Martinez to Aleman

15

and Martinez to Betts, which are the original transactions that divided the tract. Both corrected instruments assert that the metes and bounds of the respective original instrument were stated incorrectly. Each corrected instrument attaches a revised metes and bounds description, identified as Exhibits "A" and "B," respectively, which were prepared by surveyor Carlos Jimenez dated June 5, 2007. Exhibit A adds the disputed strip of property to the Zimprich chain of title and Exhibit B removes the disputed strip of property from the Heredias chain of title. By its express terms, however, each corrected instrument provides that, "the effective date of this correction deed relates back to the effective date of the Correction Deed." In other words, rather than replace each original instrument, each corrected instrument expressly relates back to itself. Thus, at best, these correction instruments relate back to October 3, 2007, and therefore, fail to pre-date the Heredias original deed dated February 7, 2007.

Lastly, the final instrument, the Deed of Trust dated May 8, 2015, also fails to support Zimprich's claim of title. A deed of trust does not convey title to land. *Karcher v. Bousquet*, 672 S.W.2d 289, 292 (Tex.App.--Tyler 1984, writ ref'd n.r.e.). Instead, it provides security for performance of a debt. *Id*. Consequently, given that the Heredias established they were fraudulently deceived when they signed a correction instrument, I would conclude that the Heredias' original deed remained effective, and the corrected instrument they signed after being deceived, was voided by their suit against Luevano. I would sustain Issue Four.

Having sustained Issues Four, Five, and Seven, I would not address the other issues.

**Conclusion**

Because the two purported correction deeds in Zimprich's chain of title did not satisfy statutory requirements, I would conclude that Zimprich's ownership interest remained subject to the Heredias' original warranty deed. Having reviewed both sides of the chain of title emanating

16

from a common source, I would conclude that Zimprich failed to carry his burden of proof to establish superior title over the disputed strip of property. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); TEX.R.APP.P. 44.1(a)(1). Accordingly, I would reverse the judgement of the trial court, enter judgment in favor of the Heredias, and remand the case to the trial court not only to set aside the voided correction deed, but to consider attorney's fees requested by the Heredias in their counter petition.

August 14, 2018

GINA M. PALAFOX, Justice