

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00775-CV

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**,
Appellant

v.

**SUMMIT RESIDENTIAL SERVICES, LLC,** as Trustee for The Hobby Falcon 2212 Land
Trust,
Appellee

From the 348th Judicial District Court, Tarrant County, Texas
Trial Court No. 348-263863-13
The Honorable Dana M. Womack, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice (concurring in the judgment only)
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 27, 2014

AFFIRMED

This is a restricted appeal from a default judgment.[1] Summit Residential Services, LLC

sued Federal National Mortgage Association ("Fannie Mae"), seeking a judgment that it was the

owner of certain property in Tarrant County, Texas. Fannie Mae did not file an answer, and the

trial court rendered a default judgment in Summit's favor. We affirm the judgment.

---

[1] By order of the Texas Supreme Court, this case was transferred to this court's docket from the Second Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We have decided this appeal in accordance with that court's precedent. *See* TEX. R. APP. P. 41.3.

## BACKGROUND[2]

In February 2008, Michael Siparkis bought the property at issue and executed a note and deed of trust in favor of W.R. Starkey Mortgage Company, LLP. In December 2010, Tejas Asset Holding, LLC purchased the property at a homeowners' association lien foreclosure sale. Tejas brought suit against Starkey to determine the rights and liabilities of the parties in the note and deed of trust to the property. The trial court rendered a judgment in that suit in June 2011, which declared the deed of trust "unenforceable."

In October 2011, Summit purchased the property from Tejas. However, in December 2011, Fannie Mae, purporting to be the owner of the note and the beneficiary of the deed of trust executed by Siparkis, sold the property to itself in a lien foreclosure sale.

Summit filed this lawsuit seeking a judgment that it owned the property in fee simple and that the deed conveyed in the December 2011 foreclosure sale was void. Fannie Mae did not file an answer, and Summit moved for default judgment. The trial court rendered judgment that Summit owned the property, that Fannie Mae owned no interest in the property, and that the December 2011 deed was void.

## DISCUSSION

To prevail in this restricted appeal, Fannie Mae must establish that: (1) it filed notice of the restricted appeal within six months after the judgment was signed; (2) it was a party to the underlying lawsuit; (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *see* TEX. R. APP. P. 30. There is no dispute that Fannie Mae met the

---

[2] The background is taken from the facts alleged in Summit's petition and an affidavit submitted in support of Summit's motion for default judgment.

first three requirements; therefore, the only issue on appeal is whether error is apparent from the face of the record. The face of the record, for purposes of restricted appeal review, consists of all the papers on file in the appeal, including all of the papers in the clerk's record and the reporter's record filed on appeal. *See DSC Fin. Corp. v. Moffitt*, 815 S.W.2d 551, 551 (Tex. 1991) (per curiam).

### A.  Do the Facts Admitted Through Default Support the Judgment?

Fannie Mae contends that the allegations in Summit's petition cannot support the trial court's judgment. Fannie Mae's argument focuses only on the part of the judgment that declares the December 2011 deed to be void.

A default judgment is properly granted if (1) the plaintiff files a petition that states a cause of action, (2) the petition invokes the trial court's jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the petition does not disclose any invalidity of the claim on its face. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988). Fannie Mae's failure to file an answer operated as an admission of the facts alleged in Summit's petition. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). However, if the facts alleged in Summit's petition do not state a cause of action or affirmatively disclose the invalidity of its cause of action, then there is error on the face of the record. *See Quality Hardwoods, Inc. v. Midwest Hardwood Corp.*, No. 2-05-311-CV, 2007 WL 1879797, at *2–3 (Tex. App.—Fort Worth June 28, 2007, no pet.) (mem. op.); *Davis v. Ross*, 678 S.W.2d 636, 637 (Tex. App.—Houston [14th Dist.] 1984, no writ).

Summit's petition alleged trespass to try title and quiet title claims. Summit's request that the trial court declare the December 2011 deed void was part of its quiet title claim. To plead a quiet title claim against Fannie Mae, Summit had to allege that 1) it had an interest in the property; 2) title to the property is affected by a claim by the defendant; and 3) the claim, though facially

valid, is void or unenforceable. *See Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). Summit's petition alleged 1) that it owns the property in fee simple; 2) that Fannie Mae holds a deed through which it purports to own the property; and 3) that the December 2011 deed is void because the deed of trust through which Fannie Mae claimed the authority to execute the foreclosure deed was declared unenforceable by the June 2011 judgment.

Fannie Mae contends that the June 2011 judgment decreed that Starkey could not enforce the deed of trust only because it had no interest in the deed of trust, not because it was generally unenforceable or void. The June 2011 judgment, however, is not in the record. Nevertheless, Fannie Mae argues that Summit's petition admits that fact, and therefore the petition cannot support the conclusion that the deed of trust was generally unenforceable. To support its argument, it points to the petition's allegation that the June 2011 judgment decreed "Starkey could not enforce any rights in the said deed of trust." But it is not necessary to construe Summit's allegation as narrowly as Fannie Mae argues, and in the absence of special exceptions, a petition is construed liberally in favor of the pleader. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). Summit also alleged in the petition that the deed of trust "had been held unenforceable." Therefore, Summit's allegations, liberally construed, would support the conclusion that the June 2011 judgment declared the deed of trust completely unenforceable.

Fannie Mae also argues that an affidavit attached to Summit's motion for default judgment supports its narrow construction of Summit's pleadings. The affidavit was executed by a manager of Tejas and appears to originally have been submitted in the proceeding that resulted in the June 2011 judgment. Tejas's manager swore that "Starkey disclaims all interest in the note and deed of trust." According to Fannie Mae, this statement shows the June 2011 judgment decreed that the deed was only unenforceable by Starkey, but not generally unenforceable. The affidavit, however, does not reveal what the June 2011 judgment actually decreed. In addition, Tejas's manager also

swore that "the Plaintiff seeks a judicial decree setting aside the deed of trust and holding that Plaintiff is the owner of the property free of all senior liens and encumbrances . . . ." Without a copy of the June 2011 judgment in the record, we are unable to determine whether the trial court granted the broad relief Tejas's manager requested. Therefore, the affidavit does not compel the conclusion that the June 2011 judgment was limited only to an adjudication that Starkey itself had no interest in and could not enforce the deed of trust.

Because there is nothing in Summit's petition or the affidavit that compels the conclusion that the June 2011 judgment was limited to a declaration that only Starkey could not enforce the deed of trust, we cannot say that the judgment is unsupported by Summit's petition, and thus there is no error apparent on the face of the record. *See Ginn v. Forrester*, 282 S.W.3d 430, 431 (Tex. 2009) (per curiam) ("A restricted appeal requires error that is apparent on the face of the record; error that is merely inferred will not suffice.").

### B.  Did Summit Properly Serve Fannie Mae?

Fannie Mae next contends that there is error on the face of the record because the record shows that it was not amenable to substituted service through the Secretary of State and that the wrong entity was served. "In order for a trial court to acquire jurisdiction necessary to support a default judgment upon substituted service, such as we have here, two requirements must be met: (1) the pleadings must allege facts which, if true, would make the defendant . . . 'amenable to service' by the use of the long-arm statute; and (2) there must be proof in the record that the defendant was, in fact, served in the manner required by statute." *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986).

### 1)  Amenability

Summit's petition alleged that substituted service on the Secretary of State was proper under section 17.044 of the Texas Long-Arm Statute. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 17.001, *et seq.* (West 2008 & Supp. 2014). The Long-Arm Statute is one of a number of statutes that provide for substituted service on a government official who will then forward service to the defendant at a designated address. *Wachovia Bank of Del., N.A., v. Gilliam*, 215 S.W.3d 848, 849 (Tex. 2007).

Fannie Mae argues that it was not amenable to substituted service through the Secretary of State under section 17.044(b) of the Long-Arm Statute. Section 17.044(b) designates the Secretary of State as the agent for service of process on a nonresident "who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party." TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(b) (West 2008). Fannie Mae contends that it was not amenable to substituted service under this section because Summit did not allege that Fannie Mae did not maintain a regular place of business in Texas.

We need not address that argument because Summit's petition alleges facts that would make Fannie Mae amenable to service under section 17.044(a)(1). That section designates the Secretary of State as the agent for service of process on a nonresident who "engages in business in this state, but has not designated or maintained a resident agent for service of process." TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(a)(1). Summit's petition alleges that Fannie Mae "is an entity holding property and doing business in the State of Texas, but is not qualified to do so" and that "[i]t has not appointed a registered agent for service of process." These allegations, admitted by Fannie Mae's default, are sufficient to show Fannie Mae was amenable to service under section 17.044(a)(1). *See*, *e.g.*, *Bigin, Inc. v. Markowitz*, No. 05-91-00760-CV, 1992 WL 122850 at *1–2 (Tex. App.—Dallas 1992, no writ) (not designated for publication); *Fairmont Homes, Inc. v. Upchurch*, 704 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1986), *aff'd as modified by*, 711 S.W.2d 618 (Tex. 1986) (per curiam).

### 2) Strict Compliance

Fannie Mae contends Summit failed to strictly comply with the rules governing service of process. It argues that the wrong entity was served because the process server's affidavit of service listed "Federal Home Loan Mortgage Corporation" as the defendant and specified that the citation served on the Secretary of State was "to be served upon Federal Home Loan Mortgage Corporation."

When the plaintiff relies on substituted service through the Secretary of State to serve a defendant, the Secretary of State is the designated agent for receiving the petition and citation on the defendant's behalf. *See Campus Invests., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (per curiam). The petition and citation in the clerk's record correctly name Federal National Mortgage Association as the entity sued, and they correctly identify the trial court cause number in this case as 34826386313. The process server's affidavit states that the petition and citation in that cause number were served upon the Secretary of State via certified mail on February 7, 2013.

The Long-Arm Statute required the Secretary of State to immediately mail a copy of the service of process to the nonresident at the address provided. TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a) (West 2008). The record contains the Secretary of State's certificate, which states that it received the petition and citation in cause number 34826386313 on February 11, 2013. The certificate states the petition and citation were mailed via certified mail to "Federal National Mortgage Assoc" on February 12, 2013. The address to which the Secretary of State mailed the copies of the petition and citation matches the address alleged in Summit's petition as Fannie Mae's home office. The certificate further states that the signed return receipt was received on February 15, 2013. "Absent fraud or mistake, the Secretary of State's certificate is conclusive evidence that the Secretary of State, as agent of [Fannie Mae], received service of process for [Fannie Mae] and forwarded the service as required by the statute." *See Capitol Brick*, 722 S.W.2d

at 401; *see also Cullever*, 144 S.W.3d at 466 (holding a certificate from the Secretary of State conclusively established that process was served); *Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 772 (Tex. App.—Fort Worth 1990, no writ) ("The fact that the certificate from the Secretary of State evidenced that process was forwarded by certified mail was sufficient to grant jurisdiction over the defendant."). Therefore, the record does not show that the wrong entity was served in this suit.

## CONCLUSION

Because there is no error apparent on the face of the record, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice