

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JEAN SLACK LOCKHART, in her capacities as Trustee of the Lockhart Family Bypass Trust and Independent Executor of the Estate of Warren L. Lockhart, | § | No. 08-19-00153-CV |
| | § | Appeal from the |
| | § | 118th District Court |
| Appellant, | § | |
| v. | § | of Howard County, Texas |
| | § | (TC# 52663) |
| CHISOS MINERALS, LLC; SANTA ELENA MINERALS IV, LP; PONDEROSA ROYALTY, LLC; BLAKE J. ROBBINS; NAVIGATOR OIL & MINERALS, INC.; MICHAEL J. DANIEL; HOLTEN G. CAMPBELL; AUSTEN S. CAMPBELL; OSADO PROPERTIES, LTD.; SHEPARD R. SITES; CASEY G. RIGGAN; LEVEE MINERALS, LLC; COMPADRE ROYALTY, LLC; JEFE INTERESTS, LLC; AND MB MINERALS, LP, | § § § § § § § | |
| Appellees. | § | |

### **O P I N I O N**[1]

Appellant Jean Slack Lockhart, in her capacities as Trustee of the Lockhart Family Bypass

Trust and Independent Executor of the Estate of Warren L. Lockhart ("Lockhart") appeals from a

summary judgment quieting title to certain mineral and royalty interests in favor of Appellees

---

[1] This case was transferred from the Eleventh Court of Appeals of Eastland, Texas, our sister court. We decide this appeal in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

Chisos Minerals, LLC; Santa Elena Minerals IV, LP; Ponderosa Royalty, LLC; Blake J. Robbins; Navigator Oil & Minerals, Inc.; Michael J. Daniel; Holten G. Campbell; Austen S. Campbell; Osado Properties, Ltd.; Shepard R. Sites; Casey G. Riggan; Levee Minerals, LLC; Compadre Royalty, LLC; Jefe Interests, LLC; and MB Minerals, LP (collectively, "Appellees"), and ordering that Lockhart take nothing on her actions for trespass to try title, quiet title, rescission and deed cancellation. On appeal, Lockhart pursues only her trespass to try title action.

Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. The Last Will and Testament of Warren Lockhart

Warren L. Lockhart, husband of Jean Slack Lockhart, died in 2001, leaving a last will and testament dated June 10, 1999 ("Will"). The Will contained the following provision concerning disposition of the residuary estate:

> 3.5. **Disposition of Residue**. I give the residue of my estate to the Trustee(s) of the Bypass Trust created under the Lockhart Family Trust Agreement, originally executed on the 4th day of January[ ] 1992, by Warren L. Lockhart and Jean Slack Lockhart as Grantors and Warren L. Lockhart and Jean Slack Lockhart as Trustees, and as thereafter amended or restated. The Trustee(s) of that trust shall add the residue of my estate to the trust principal and hold, administer, and distribute the property in accordance with the provisions of that trust agreement including any amendments of that trust agreement that have been made before or after execution of this Will.

It is undisputed that the residuary estate included an undivided 147.05/678.2 mineral interest, including an undivided 129.55/678.2 royalty interest, in Section 38, Block 32, Township 3 North, T&P Ry. Co. Survey, Howard County, Texas (the "Section 38 Interest").

Jean Lockhart was appointed independent executor ("Executor") of Warren Lockhart's

2

estate ("Estate"), and under the terms of the Will, was granted "all of the powers enumerated in this will and all powers now or hereafter conferred by the Texas Trust Code . . . ." The Will then more specifically provided that the independent executor was authorized "[t]o exercise with regard to the probate estate all powers (including the power of sale) granted to a Trustee under the Texas Trust Code (or its successor) and to the Trustee under the Lockhart Family Trust Agreement herein above referred to, such powers to be exercised without court supervision or control."

### 2. The Restatement of the Lockhart Family Trust

On the same date as the execution of the Will, Jean Lockhart and Warren Lockhart also executed a Restatement of the Lockhart Family Trust ("Trust Agreement"). The Trust Agreement provided that, upon the death of the first of the grantors to die, the trust estate was to be divided into two separate trusts, those being the Survivor's Management Trust and the Bypass Trust. Pursuant to the Will and the Trust Agreement, the Section 38 Interest was allocated to the Bypass Trust.

The terms of the Bypass Trust authorized the trustee, during the lifetime of the surviving grantor, to "at any time pay or apply so much of the net income or so much of the principal of the Bypass Trust as shall be needed to provide for the health, maintenance and support of the surviving Grantor." Upon the death of the surviving grantor, the remaining trust estate was to be divided among six named beneficiaries—Nilah Gould Staskus, Harold G. Thompson, Phillip Gould, Toni Passero Leake, Connie Lockhart Hill, and Ben Lockhart.

Warren Lockhart and Jean Lockhart served as co-trustees of the Bypass Trust until Warren Lockhart's death. At that time, Jean Lockhart became the sole trustee ("Trustee").

3

### 3. The Distribution Deeds

#### a. The Original Distribution Deed

On October 22, 2002, Jean Lockhart executed a deed ("Distribution Deed") stating that the Estate desired to transfer mineral interests then held by it, and that Jean Lockhart desired to transfer mineral interests held by her, individually. The Distribution Deed recites:

> JEAN S. LOCKHART, individually and as Executor of the Warren L. Lockhart Estate for and in consideration of the above and by these presents do GRANT, GIVE, TRANSFER, and CONVEY unto Jimmy Roy Lockhart, Carla Sue Mize and Benny Allen Lockhart,[2] as Tenants in Common, all of the Estate's interest, if any, in and to any and all of the mineral estate, including all of the oil, gas, and other minerals in and under and that may be produced from [part of Section 38.]

But despite the references to the mineral estate, the property description in the deed expressly includes the surface estate only.

> The Distribution Deed also contains the following language pertinent to this appeal:

> TO HAVE AND TO HOLD the above-described property, together with all the rights and appurtenances thereto belonging unto the GRANTEES, their successors and assigns forever; and GRANTOR does hereby bind GRANTOR and GRANTOR's heirs, executors, administrators, successors, and assigns to warrant and forever defend the said property unto GRANTEES, its successors, and assigns against every person lawfully claiming or to claim the same or any part thereof, by, through, or under GRANTOR, but not otherwise.

Jean Lockhart signed the Distribution Deed twice, once in her individual capacity, and once as Executor of the Estate. On its face, the deed reflects it was filed of record with the Howard County Clerk's Office on October 25, 2002.

#### b. The First Correction Deed

On August 29, 2003, Jean Lockhart, individually and as Executor of the Estate, executed a

---

[2] We will refer to Jimmy Roy Lockhart, Carla Sue Mize, and Benny Allen Lockhart as "the Lockhart Grantees."

4

Correction Distribution Mineral Deed and Assignment of Mineral Interests ("First Correction Deed"). That deed recites that it was the grantor's intent in the Distribution Deed to convey the mineral interest but that, by reason of a scrivener's error, the property description included a reference to "surface rights only . . . ." The First Correction Deed then recites:

> For adequate consideration, Grantor corrects the Prior Deed, acknowledging it was in error in referring to the "surface rights only," and grants, gives, transfers, and conveys to Grantees, all of the mineral interest and estate in the lands described in the Prior Deed, all as provided for in that Deed, the terms of which, and the description of the lands included in it (excluding the reference[] to the "surface rights"), are deemed incorporated into this Correction Deed for all purposes.

The effective date of the First Correction Deed is stated as October 22, 2002. It was filed of record on September 2, 2003.

### c. The Second Correction Deed

On April 4, 2014, Jean Lockhart, individually and as Executor of the Estate, executed a second Correction Distribution Mineral Deed and Assignment of Mineral Interests ("Second Correction Deed"). That deed recites in relevant part:

> That I, JEAN S. LOCKHART, individually and as Independent Executrix of the Estate of Warren L. Lockhart, . . ., hereinafter called Grantor, for and in consideration of TEN AND NO/100 DOLLARS ($10.00), has granted sold, and convey unto JIMMY ROY LOCKHART . . . , CARLA SUE MIZE . . . , and BENNY ALLEN LOCKHART . . . , hereinafter called Grantees, all of Grantor's interest in the oil, gas, and other minerals of every kind and character in, under and that may be produced from [Section 38].
>
> . . .
>
> This Correction Distribution Mineral Deed and Assignment of Mineral Interests is filed in correction of and complete substitution for the Distribution Mineral Deed and Assignment of Mineral Interests recorded in Volume 873, Page 466 and Volume 908, Page 281, Official Public Records of Howard County, Texas, in order to correct the legal description of the property, which should be Section 38, Block 32, T-3-N, Howard County, Texas. In all other respects, this correction deed ratifies and confirms said prior mineral deeds.

5

The Second Correction Deed, like the First, was made effective as of October 22, 2002. It was filed of record on April 14, 2014.

### 4. Subsequent transfers

The Lockhart Grantees (or their heirs) subsequently executed various mineral leases covering the Section 38 Interest. Grenadier Energy Partners II, LLC ("Grenadier"), which is not a party to this appeal, ultimately acquired those mineral leases and drilled a well on Section 38. Through another series of conveyances, the interests conveyed to the Lockhart Grantees pursuant to the Distribution Deed, First Correction Deed, and Second Correction Deed (collectively, "Deeds") were ultimately conveyed to Appellees.

## B. Procedural Background

In April 2018, Lockhart filed suit against Appellees, asserting claims for trespass to try title, rescission and cancellation of the Second Correction Deed, and a suit to quiet title in the Section 38 Interest. Appellees responded by asserting a variety of affirmative defenses and a counterclaim for slander of title. In answer to the counterclaim, Lockhart asserted the affirmative defense of lack of consideration.

Appellees then filed a motion for traditional summary judgment asserting entitlement to judgment as a matter of law on Lockhart's claims based on eight grounds: (1) that a defense of lack of consideration is insufficient to rescind or cancel a deed; (2) that Lockhart had authority to execute the Deeds under both the Will and the Bypass Trust; (3) that Appellees are bona fide purchasers for value; (4) that the Deeds are not quitclaim deeds; (5) that the Deeds are special warranty deeds; (6) that Appellees hold title under the Shelter Rule; (7) that estoppel by deed precludes Lockhart's claims; and (8) that the claim for rescission and cancellation is barred by

6

limitations.

Lockhart also filed a motion for traditional summary judgment, contending that she holds superior title to the Section 38 Interest and that she lacked authority to gift that interest to the Lockhart Grantees. She further urged that the Deeds are quitclaim deeds that do not convey title, and that the Correction Deeds are void because they materially changed the Distribution Deed but are not signed by the Lockhart Grantees. Lockhart also addressed Appellees' affirmative defenses of bona fide purchaser, estoppel by deed, and limitations. Appellees filed objections to certain of Lockhart's summary judgment evidence, including various aspects of Jean Lockhart's affidavit.

In an interlocutory order dated April 5, 2019, the trial court granted Appellees' motion for summary judgment, denied Lockhart's motion for summary judgment, quieted title to the Section 38 Interest in Appellees, and ordered that Lockhart take nothing on her claims. Appellees then nonsuited their claim for slander of title, and, on April 8, 2019, the court entered a final judgment incorporating the rulings contained in the interlocutory order. The court also signed an order granting Appellees' objections to Jean Lockhart's affidavit.

This appeal primarily concerns the merits of Lockhart's trespass to try title action—whether Lockhart conclusively established that action, or whether Appellees conclusively negated it or conclusively established an affirmative defense to it. Lockhart has expressly waived on appeal her action to quiet title based on the alleged invalidity of the Deeds, and her claim for rescission and cancellation of the Second Correction Deed.

## II. ISSUES ON APPEAL

Lockhart presents three issues on appeal. In her first issue, Lockhart asserts the trial court erred by concluding that she failed to establish her trespass to try title claim as a matter of law

based on the following alternative grounds: (1) that the Deeds were not effective to transfer title because she did not sign them in her capacity as Trustee; (2) the Deeds were not effective to transfer title because she did not have authority, in any capacity, to make a gift of the Section 38 Interest; (3) the Deeds are quitclaim deeds that did not convey the Trust's interest in the property; or (4) the Correction Deeds were not effective because they made material changes to the Distribution Deed but were not signed by the Lockhart Grantees.

In her second issue, Lockhart further asserts that the trial court erred by granting Appellees' motion for summary judgment because Appellees failed to conclusively establish the affirmative defense of bona fide purchaser or estoppel by deed.

In her third and final issue, Lockhart contends that the trial court abused its discretion by striking her summary judgment affidavit in its entirety.

We turn first to the applicable standards of review.

## A. Standards of Review

### 1. Summary judgment

Summary judgments are reviewed de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mann*, 289 S.W.3d at 848; TEX. R. CIV. P. 166a(c). "[A] defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense is entitled to summary judgment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

8

"When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann*, 289 S.W.3d at 848. And where, as in this case, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216 (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)).

### 2. Evidentiary error

Evidentiary rulings are reviewed for abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Waldrip*, 380 S.W.3d at 132; *see Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). But even if a trial court's evidentiary ruling is an abuse of discretion, reversal is appropriate only if the error was harmful. *Waldrip*, 380 S.W.3d at 132; TEX. R. APP. P. 44.1.

### B. Issue One: suitability of the trespass to try title action

In her first issue, Lockhart asserts multiple grounds supporting her trespass to try title claim. As Trustee of the Bypass Trust, she generally contends she has superior title to any claimed by Appellees. Countering, Appellees initially assert that Lockhart's trespass to try title claim fails because Appellees are not in possession of the Section 38 Interest. Given the nonpossessory nature of the Section 38 Interest, Appellees assert that Lockhart waived the only claims upon which this Court could set aside the Distribution Deeds. Beyond those preliminary arguments, Appellees

9

contend that Lockhart's trespass to try title claim fails as a matter of law because she cannot establish superior title out of a common source.

We turn first to address Appellees' preliminary arguments.

### 1. Appellees' preliminary argument against Lockhart's trespass to try title action

Appellees initially contend that Lockhart's cause of action is not even actionable in this instance. As long recognized, a trespass to try title action adjudicates title or the right of possession of real property. *Rogers v. Ricane Enterprises, Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *see* TEX. PROP. CODE ANN. § 22.001 (a trespass to try title action is a method of determining title to real property). Because trespass to try title is a possessory remedy, Appellees contend that a nonpossessory interest such as a royalty interest is not suitable for a trespass to try title action. *See Glover v. Union Pac. R. Co.*, 187 S.W.3d 201, 210 (Tex. App.—Texarkana 2006, pet. denied); *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App.—Austin 1983, writ ref'd n.r.e.). Appellees only assert ownership of a nonpossessory royalty and reversionary interest in the Section 38 property.[3] Accordingly, as a general matter, they argue that Lockhart's trespass to try title claim is not actionable against them. *See Glover*, 187 S.W.3d at 210; *T-Vestco*, 651 S.W.2d at 291.

Initially, Lockhart responds by contending that Appellees waived this argument given it was not first raised in the trial court. For waiver, Lockhart relies on *Vernon v. Perrien*, 390 S.W.3d 47 (Tex. App.—El Paso 2012, pet. denied), and *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308 (Tex. App.—Amarillo 2001, pet. denied).

---

[3] Grenadier, which is not a party to this appeal, is the holder of a fee simple determinable interest in the minerals and an operator/lessee with the right to possess the Section 38 Interest.

10

### a. Waiver

*Vernon* and *Krabbe* each concerned a declaratory judgment following a bench trial. *See Vernon*, 390 S.W.3d at 54; *Krabbe*, 46 S.W.3d at 311. And, in each case, the appellant challenged an award of attorney's fees on the ground that the action was not properly a declaratory judgment action but was, rather, a trespass to try title action. *See Vernon*, 390 S.W.3d at 62; *Krabbe*, 46 S.W.3d at 320-21. Finally, in each case, both courts held that error was not preserved for review because the appellant had not asserted such argument in the trial court. *See Vernon*, 390 S.W.3d at 62; *Krabbe*, 46 S.W.3d at 321.

Unlike the instant case, neither *Vernon* nor *Krabbe* involved the use of summary judgment procedure nor its concomitant burdens of proof. Lockhart points out that summary judgment may be granted only on grounds expressly asserted in the summary judgment motion, and that Appellees did not assert their nonpossessory interest argument in their motion. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); TEX. R. CIV. P. 166a(c). But here, Lockhart herself affirmatively moved for summary judgment on her own trespass to try title action. Thus, as movant, she bore the burden of conclusively establishing each element of her cause of action. *See Mann*, 289 S.W.3d at 848; TEX. R. CIV. P. 166a(c). That burden would logically include establishing that the real property interest at issue is a proper subject for a trespass to try title action.

Appellees, as nonmovants, had no burden even to respond to Lockhart's motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). Rather, "summary judgments must stand or fall on their own merits, and the non-movant's failure to except or respond cannot supply by default the grounds for summary judgment or the summary judgment proof necessary to establish the movant's right . . . ." *Id.* Because Appellees had no burden to respond to

11

Lockhart's motion, it follows they had no burden to oppose it on the ground that their Section 38 Interest is nonpossessory and, therefore, not suitable for a trespass to try title action. *See id.* For this reason, *Vernon* and *Krabbe*'s preservation of error analysis does not apply to the question of whether the trial court erred by denying Lockhart's motion for summary judgment. Yet the analysis does not end with that determination alone.

Here, the trial court did not simply deny Lockhart's motion for summary judgment; rather, based on Appellees' own motion for summary judgment, it entered a take-nothing judgment on all of Lockhart's claims, including her action for trespass to try title. Granting Appellees affirmative relief is proper only if Appellees either conclusively negated Lockhart's trespass to try title action or conclusively established an affirmative defense to that action.[4] *See Bradshaw*, 457 S.W.3d at 79 (explaining summary judgment burdens). In this context, the trial court remained constrained to grant affirmative relief to Appellees based only on grounds expressly presented in their summary judgment motion. *See Magee*, 347 S.W.3d at 297; TEX. R. CIV. P. 166a(c). Here, Appellees failed to present to the trial court their argument that trespass to try title is not a suitable action against them because they only assert ownership of a nonpossessory royalty and reversionary interest in Section 38. *See Glover*, 187 S.W.3d at 210; *T-Vestco*, 651 S.W.2d at 291. Given this omission, Appellees cannot raise their preliminary argument for the first time on appeal as grounds for affirming the trial court's take-nothing judgment; it is not preserved for review in that context. *See Vernon*, 390 S.W.3d at 62; *Krabbe*, 46 S.W.3d at 321.

---

[4] Appellees assert that Lockhart's failure to prove superior title bars her from recovery. But the case on which they rely, *Kilpatrick v. McKenzie*, 230 S.W.3d 207 (Tex. App.—Houston [14th Dist.] 2006, no pet.), was an appeal following a bench trial, not a summary judgment. While failing to establish one's right to recovery in a trial on the merits warrants entry of a take-nothing judgment, failing to establish one's right to summary judgment does not.

Nonetheless, in the context of determining whether the trial court erred by denying Lockhart's motion for summary judgment, we may properly consider whether a trespass to try title action is suitable in this case. Having disposed of Lockhart's initial waiver argument, we turn now to the merits of Appellees' contention that a trespass to try title claim is not an appropriate action based on the nature of their ownership interest.

### b. Suitability of Lockhart's trespass to try title claim against Appellees

Lockhart does not dispute that Appellees' interest in Section 38 is a nonpossessory interest. As nonpossessory property, the Section 38 Interest is not a suitable subject for a trespass to try title action against Appellees. *See Glover*, 187 S.W.3d at 210 (observing that a royalty interest is a nonpossessory interest); *T-Vestco*, 651 S.W.2d at 291 (concluding that a royalty interest cannot support a trespass to try title action). It follows, then, that Lockhart failed to conclusively prove that she is entitled to judgment on that action. But, again, Lockhart's failure to sustain her summary judgment burden of proof does not alone support the grant of a take-nothing judgment on her claim. Instead, the propriety of that ruling depends on whether Appellees themselves sustained their own summary judgment burden, either by conclusively negating an element of trespass to try title or by conclusively establishing every element of an affirmative defense.

A plaintiff may recover in trespass to try title "(1) by proving a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a common source, (3) by proving title by limitations, or (4) by proving prior possession, and that the possession has not been abandoned." *Rogers*, 884 S.W.2d at 768. Ultimately, the plaintiff must recover upon the strength of her own title, not the weakness of the defendant's title. *Vernon*, 390 S.W.3d at 60 (citing *Rogers*, 884 S.W.2d at 768).

13

The parties agree that they claim title to the Section 38 Interest out of a common source—Warren Lockhart.[5] The question, then, is whose title is superior. *See Rogers*, 884 S.W.2d at 768. We reiterate that, in a trial on the merits, Lockhart would bear the burden of proving that her title is superior. *See id.* But, in the context of this summary judgment appeal, the take-nothing judgment on this claim can be sustained only if Appellees conclusively negated the superiority of Lockhart's title or conclusively established an affirmative defense.

As a preliminary matter, it is appropriate at this juncture to distinguish between an action for trespass to try title, which is at issue in this appeal, and an action to quiet title, which Lockhart has expressly waived. As this Court has previously explained:

> A suit to remove cloud from title or suit to quiet title is different from an action in trespass to try title. A trespass-to-try-title action is statutory and accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy. A suit to quiet title relies on the invalidity of the defendant's claim to the property. . . . The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. . . . The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.

*Vernon*, 390 S.W.3d at 61 (citations omitted).

Lockhart argues on appeal that she has superior title to the Section 38 Interest because the Distribution Deed and Correction Deeds are invalid. But this alleged invalidity is an element of an action to quiet title, not trespass to try title. *See id.* (trespass to try title depends on strength of plaintiff's title, not weakness of defendant's title; action to quiet title requires showing defendant's

---

[5] We believe it is more accurate to state that the common source is the Estate of Warren Lockhart. Upon Warren Lockhart's death, the Section 38 Interest became a part of his Estate and, under his Will, was allocated to the residuary estate. Lockhart, as Trustee, claims the Section 38 Interest through the Estate, as the residuary estate was devised to her in that capacity. Appellees also claim the Section 38 Interest through the Estate, as they contend that Lockhart, as Executor, had authority to, and did, convey it in the course of her administration of the Estate.

14

claim is invalid). As Appellees point out, because Lockhart waived her action to quiet title and her claim for rescission and cancellation, no claim remains by which the Deeds may be held to be invalid or unenforceable.

Lockhart also urges, however, that the Deeds are void, rather than voidable. The Supreme Court has long held that, "where a deed is absolutely void, a suit at law in trespass to try title may be maintained to recover the land without setting the deed aside . . . ." *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (1942). For this reason, Lockhart's waiver of her action to quiet title and her claim for rescission and cancellation does not preclude her trespass to try title action, insofar as that action is based on an assertion that the Deeds are void rather than voidable. *See id.*

### 2. Lockhart's alternative claims asserting the Deeds are void or ineffective

By alternative grounds, Lockhart contends: (a) that the Deeds were not effective to transfer title because she did not sign them in her capacity as Trustee; (b) that the Deeds were not effective to transfer title because she did not have authority, in any capacity, to make a gift of the Section 38 Interest; (c) that the Deeds are quitclaim deeds that did not convey the Trust's interest in the property; and (d) that the Correction Deeds were not effective because they made material changes to the Distribution Deed but were not signed by the Lockhart Grantees.

We address each ground in turn.

#### a. Failure to sign the Deeds as Trustee

"The statutes in force at the time of death govern the disposition of the decedent's estate." *Dickson v. Simpson*, 807 S.W.2d 726, 727 (Tex. 1991). At the time of Warren Lockhart's death in 2001, descent and distribution were governed by the Texas Probate Code. Section 37 of that Code provided, in pertinent part, "When a person dies, leaving a lawful will, all of his estate devised or

bequeathed by such will . . . shall vest immediately in the devisees or legatees of such estate . . . ; subject, however, to the payment of the debts of the testator or intestate, except such as is exempted by law . . . ." TEX. PROB. CODE ANN. § 37.[6]

Applying this statute to the present case, title to Warren Lockhart's residuary estate vested immediately in Lockhart, as Trustee, upon Warren Lockhart's death. *See id.* Because the Will made no specific devise of the Section 38 Interest, that Interest became a part of the residuary estate which vested in Lockhart, as Trustee. But, as is further discussed below, the Section 38 Interest was not necessarily placed beyond the Executor's power and authority to administer the Estate.

Lockhart's primary contention is that the Deeds were ineffective to convey the Section 38 Interest because she did not sign them in her capacity as Trustee.[7] She relies heavily on *O'Neil v. Powell*, 470 S.W.2d 775 (Tex. App.—Fort Worth 1971, writ ref'd n.r.e.), and *Taylor v. Guillory*, 439 S.W.2d 362 (Tex. App.—Houston [1st Dist.] 1969, no writ), to support this contention. Appellees, on the other hand, rely on *West 17th Resources, LLC v. Pawelek*, 482 S.W.3d 690 (Tex. App.—San Antonio 2015, pet. denied), to demonstrate that *O'Neil* and *Taylor* do not support Lockhart's position. We begin with *Pawelek*, which addresses both *O'Neil* and *Taylor*.

*Pawelek* concerned property in which Irene Mika held a 1/6 interest individually, but also

---

[6] The Legislature, by Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1–12, 2009 Tex. Gen. Laws 1512–1732, eff. January 1, 2014, repealed the Texas Probate Code and enacted the Texas Estates Code. Section 37 of the former Probate Code is now codified in the Estates Code at sections 101.001 and 101.051. *See* TEX. PROB. CODE § 37, Act of Mar. 16, 1955, 54th Leg., R.S., ch. 55, § 37, 1955 Tex. Gen. Laws 88, 100 (amended 1969 and 1981) (codified at TEX. EST. CODE ANN. §§ 101.001, 101.051). We will refer to section 37 of the Probate Code as this is the statute that applies in this case.

[7] This contention is not waived by Lockhart's failure to pursue her action to quiet title and her rescission and cancellation claim because it does not depend on setting the Deeds aside.

a 1/10 interest as trustee. 482 S.W.3d at 691. Mika and the other owners of the subject property executed a deed conveying the entire property to the Paweleks. Mika was named as one of the grantors, but she signed the deed without indicating whether she was signing individually or as trustee. *Id.* at 692. After Mika's death, the beneficiaries of the trust executed a mineral lease with West 17th Resources, LLC, covering the 1/10 interest previously held by Mika as trustee. *Id.* at 692. West 17th then brought a trespass to try title suit against the Paweleks. *Id.* The trial court granted summary judgment in the Paweleks' favor. *Id.*

On appeal, West 17th relied on *Taylor* and *O'Neil* for the proposition that, "when a grantor does not disclose her capacity 'as trustee' on the deed, the deed does not convey any interest the grantor holds in trust." *Id.* at 693. The court of appeals determined, however, that neither case supports that proposition. *Id.* at 693-94. As Lockhart makes the same argument, relying on the same cases, we examine *Taylor* and *O'Neil*, as well as the *Pawelek* court's assessment of those cases.

At issue in *Taylor* was a deed purporting to convey property owned by the trustees of a church. The deed identified the grantor as "the trustees of the Church of God in Christ . . . acting herein by and through their duly authorized officers . . . ." 439 S.W.2d at 363. But "[t]he signatures [did] not reflect that the three persons whose names were subscribed to the instrument had executed it as trustees or as officers of the trustees, nor [did] the acknowledgment reflect that they executed it in any particular capacity." *Id.* at 364. In addition, testimony was presented that the three persons who signed the deed were not, in fact, trustees of the church. *Id.* at 364-65. In the absence of findings of fact and conclusions of law, the court of appeals presumed that the trial court found that those three persons lacked authority to act as or for the trustees and, therefore, appellants, who

17

claimed through the deed at issue, were not entitled to recover the land. *Id.* at 365.

Concerning *Taylor*, the *Pawelek* court explained:

Although the purported trustee-grantors who signed the deed in *Taylor* failed to disclose their capacity "as trustees," *Taylor* does not hold that the failure to disclose the capacity is, alone, sufficient to resolve whether the deed actually conveyed title held by the trust. The *Taylor* court held the evidence, which included uncontested testimony that those who signed the deed lacked any authority to act as or for the trustees, supported the trial court's implied finding that the grantors lacked capacity to act as or for the trustees.

*Pawelek*, 482 S.W.3d at 693 (citation omitted). We agree.

*Taylor* is factually distinguishable and does not stand for the proposition that a trustee's mere failure to expressly sign a deed "as trustee" prevents the deed from effectively conveying the trustee's interest. We turn then to *O'Neil*.

*O'Neil* was a suit for specific performance of a contract for the sale of real property brought by the buyers against the sellers. *Id.* at 776. Seller Powell signed the contract in her individual capacity, and only sued in that capacity. *Id.* at 779. O'Neil argued that Powell had full power and authority, as independent executrix and trustee under a will, to convey the property at issue. *Id.* at 779. The court held, though, that because Powell signed the contract only in her individual capacity, and was sued only in that capacity, she could not be compelled to execute a deed in any other capacity. *Id.* Further, compelling her to execute a deed in her individual capacity would be a useless act because "[a] deed signed by her in her individual capacity would not pass title." *Id.*

Concerning *O'Neil*, the *Pawelek* court noted:

The opinion in *O'Neil* does not state whether the seller expressly signed in her individual capacity or failed to disclose her capacity when signing the contract. Thus, it is unclear whether the court's conclusion that the seller "signed the contract in her individual capacity" was based on the seller's failure to state her capacity. Furthermore, the issue relating to the deficiency of the parties was, as the court of appeals noted, "unimportant and . . . moot." To the extent *O'Neil* can be read as

18

supporting appellant's position, the *O'Neil* court cited no authority and provided no rationale explaining why a trustee's failure to state her capacity as trustee when signing a deed raises a conclusive presumption that the trustee did not intend to convey trust property, despite clear language of a contrary intent.

*Pawelek*, 482 S.W.3d at 694 (citation omitted).

We again agree with *Pawelek's* reasoning and conclude that *O'Neil*, like *Taylor*, does not support Lockhart's position that her failure to indicate her capacity "as trustee" on the subject Deeds conclusively renders them ineffective to pass any interest held by the Trust.

After rejecting the proposition that "a grantor's failure to specify her capacity either 'individually' or 'as trustee' nullifies a deed's purported conveyance of property that the grantor holds in trust[,]" *Pawelek* concluded that whether the deed at issue conveyed all of the property, including that held in trust, was an issue of deed construction. *Id.* at 694-95. Because the granting clause of the deed conveyed "all" of the property, subject only to a utility easement, the court concluded that it conveyed the interest held by Mika as trustee. *Id.* at 695.

But *Pawelek*, like *Taylor* and *O'Neil*, is distinguishable from the present case. The grantor in *Pawelek*, who held interests both individually and as trustee, did not specify any capacity at all when signing the subject deed. *See id.* at 692. Here, Lockhart, who argues that she held an interest in the property only as Trustee, specified that she was signing the Deeds both in her individual capacity and as Executor of the Estate. For this reason, Lockhart argues that *Pawelek* does not preclude her contention that, "when a grantor signs a deed and specifies the capacities in which she signs, the deed conveys only property she holds in the specified capacities . . . ." *See Rogers*, 884 S.W.2d at 768-69 (corporation president signed deed to corporate property in personal capacity; grantee received nothing because president owned no interest in the property).

In response, Appellees argue that the Deeds conveyed Lockhart's interest in the property

19

in every capacity, including as Trustee, because the Deeds purport to convey "all" of her interest. We disagree. The Distribution Deed expressly states that it conveys "all of *the Estate's* interest, if any . . . ." (Emphasis added.) The First Correction Deed recites that the Distribution Deed was intended to convey "all of the interest in the mineral estate *owned by the Grantor, individually and as Executor of the Estate of Warren L. Lockhart*." (Emphasis added.) It further incorporates the terms of the Distribution Deed (other than the reference to "surface rights"), which would include the statement that the conveyance is of the Estate's interest, if any. Finally, while the Second Correction Deed states that it conveys "all of Grantor's interest[,]" "Grantor" is specifically defined as Lockhart, *individually and as Executor of the Estate*.

We cannot construe the Deeds as constituting a conveyance by Lockhart, as Trustee, of any interest owned by the Trust, without ignoring the express language of those Deeds. This we are not permitted to do. *See U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 151 (Tex. 2018) (courts may not construe deeds in manner rendering language meaningless).

We conclude that, because Lockhart did not sign the Deeds in her capacity as Trustee, they did not convey whatever interest the Trustee held in Section 38. But this does not necessarily mean the Deeds are void. Rather, the question remains whether the Deeds conveyed the Section 38 Interest by virtue of Lockhart's signature as Executor.

### b. Lockhart's capacity and authority as Executor

It is undisputed that Lockhart was the duly appointed Executor of the Estate. As such, she clearly had *capacity* to execute the Deeds conveying the Estate's interest, if any, in Section 38. The Deeds are therefore not void for lack of capacity in the grantor. *See Slaughter*, 162 S.W.2d at 675 ("a deed may be regular on its face and yet be void and ineffectual to pass any title to the

20

grantee . . . where the grantor had no capacity to execute it").

Lockhart also contends that the Deeds are void because she lacked *authority*, as Executor, to gift the Section 38 Interest. But a lack of authority would render the Deeds only voidable, not void. *See Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976) (holding conveyance signed without authority voidable rather than void); *Bowman v. The Bank of New York Mellon Tr. Co., N.A.*, No. 05-13-01684-CV, 2016 WL 258765, at *6 (Tex. App.—Dallas Jan. 21, 2016, pet. denied) (mem. op.) (deed signed without authority is voidable); *Standiford v. CitiMortgage, Inc.*, No. 03-14-00344-CV, 2015 WL 6831578, at *4 (Tex. App.—Austin Nov. 3, 2015, pet. denied) (assignment made without authority is voidable).

In any event, the record does not reveal that Lockhart, as Executor, lacked authority to convey the Section 38 Interest. We begin by looking to the terms of the Will to ascertain the scope of her authority in that capacity.

As previously noted, Warren Lockhart owned the Section 38 Interest as separate property and, upon his death, it became an asset of his Estate. As the Will contained no specific devise of this Interest, it was allocated to the residuary estate. Lockhart contends that title to the residuary estate, including the Section 38 Interest, vested immediately in her as Trustee of the Bypass Trust upon Warren Lockhart's death, placing that Interest under her sole authority in that capacity and beyond her reach as the Executor of the Estate. *See* TEX. PROB. CODE ANN. § 37. Appellees agree that title to the residuary estate vested in the Trustee of the Bypass Trust upon Warren Lockhart's death. But more pointedly, they further note that this interest remained subject to administration of the Estate by the Executor. *See id.* In short, Appellees argue the Section 38 Interest remained within the Executor's authority to administer the Estate. To address these opposing views, we

again look to the terms of the Will.

The Will directed that the decedent's personal debts, funeral and administration expenses, and certain taxes were to be paid out of the residuary estate, after which the remaining residuary estate was given to the Trustee of the Bypass Trust. Concerning the administration of the Estate, the Will described the powers of the Executor of the Estate as follows:

> To exercise with regard to the probate estate all powers (including the power of sale) granted to a Trustee under the Texas Trust Code (or its successor) and to the Trustee under the Lockhart Family Trust Agreement herein above referred to, such powers to be exercised without court supervision or control.

The opinion of the Dallas Court of Appeals in *Dallas Services for Visually Impaired Children, Inc. v. Broadmoor II*, 635 S.W.2d 572 (Tex. App.—Dallas 1982, writ ref'd n.r.e.), is instructive. The will at issue in that case provided that the two individuals who were named as executors were given a life estate in certain real property, with a remainder interest to Dallas Services. *Id.* at 575. The executors were given broad powers to sell estate property "should it become necessary for the preservation of [the] estate." *Id.* In addition, the executors were given the same rights and powers to control, manage, and dispose of the estate as would be given a trustee under the Texas Trust Act. *Id.*

The executors, signing both individually and as executors, executed a deed purporting to convey the property in fee simple to third parties. *Id.* Ten years later, Broadmoor purchased the property from parties claiming through those third parties. *Id.* Three years after that, Dallas Services sued Broadmoor, asserting that Broadmoor received only a life estate in the property. *Id.*

The *Broadmoor* court held that the executors had authority to sell the property under the will provision invoking the Texas Trust Act because that Act authorizes a trustee "to sell real or personal property at public auction or at private sale," and also "to execute and deliver any deed

22

or other instrument . . . necessary, desirable or advisable" to carry out any of the other specified powers. *Id.* at 576. The court explained, "[b]y such reference to the Trust Act, the testator evidently intended to confer on the executors broad powers concerning the management of his estate, including authority to sell real estate on such terms as the executors might consider advisable, whether or not such a sale was strictly necessary for the payment of debts." *Id.*

We conclude that the same is true in the present case. Warren Lockhart, by granting the Executor of his Estate all the powers granted a trustee under the Texas Trust Code, intended to confer on her broad powers concerning the management of his estate, including authority to sell real estate on such terms as she might consider advisable. *See id.*; *see also* TEX. EST. CODE ANN. § 356.002 (if will authorizes executor to sell testator's property, executor may sell without court order). These broad powers, combined with the instruction to pay certain debts out of the residuary estate, conferred on Lockhart, as Executor, the authority to sell Estate property, including property allocated to the residuary estate. *See Broadmoor*, 635 S.W.2d at 576 (recognizing executor's power to sell estate assets conferred by incorporation of Texas Trust Act powers).

Lockhart acknowledges that the Will granted her, as Executor, the power of sale, but argues that such power "is not synonymous with the power of gift." *See Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165, 167 (1946) (gift of property is not authorized by power of sale). She thus contends that, regardless of any power of sale she possessed as Executor, the Deeds are void because she had no authority to *gift* the Section 38 Interest.[8] The issue presented, then, is whether the Deeds

---

[8] Lockhart makes the same argument in relation to her capacity as Trustee. We have held above, however, that she did not convey the property in that capacity. Consequently, we need not address her authority, if any, to make a gift in that capacity.

23

purport to effect a gift or a sale.[9]

The Distribution Deed recites that Lockhart, individually and as Executor, "for and in consideration of the above and by these presents do GRANT, GIVE, TRANSFER, and CONVEY unto [grantees], all of the Estate's interest, if any, in and to any and all of the mineral estate . . . ." Appellees urge that the language, "for and in consideration of" demonstrates that the conveyance was a sale. That language, however, expressly refers to the previous paragraph of the Deed, which recites Lockhart's appointment as Executor of the Estate and her desire "to transfer the mineral interests currently held by" that Estate. The "in consideration" language does not indicate that the transfer was made in exchange for anything of value and, therefore, does not support the contention that the transfer was a sale rather than a gift.

Lockhart emphasizes the Distribution Deed's use of the word "give" in the granting clause establishes the transfer was a gift, not a sale. Appellees focus on the words "grant," "transfer," and "convey" as indicating a sale. They further argue that "give" does not equate to "gift," but they offer no other connotation for the word in the context of the remaining words of the Distribution Deed. Every word in the Distribution Deed must be given some meaning and effect, and we conclude that the word "give" is at least some indication that the conveyance was meant to be a gift. *See U.S. Shale Energy*, 551 S.W.3d at 151 (in construing deeds, courts seek to harmonize and give effect to all provisions so none will be meaningless). That does not end the inquiry, however. We must also consider the effect of the two subsequent Correction Deeds.

The First Correction Deed, like the Distribution Deed, employs the language, "grants,

---

[9] Lockhart relies on statements contained in her summary judgment affidavit to support her argument that the Deeds attempted to effect a gift. The trial court sustained Appellees' objections to these statements, a ruling which is addressed later in this opinion. Our analysis of the gift issue is founded on the language of the Deeds themselves.

gives, transfers, and conveys . . . ." As with the Distribution Deed, the use of the word "give" is some indication of a gift rather than a sale. But the First Correction Deed also recites that it is being given "[f]or adequate consideration." This language indicates that the transaction is a sale rather than a gift. But, again, we must look further because the First Correction Deed was subsequently corrected and replaced.

The Second Correction Deed recites that Lockhart, individually and as Executor, "for and in consideration of TEN AND NO/100 DOLLARS ($10.00), has granted[,] sold, and convey[ed]" the Section 38 Interest to the Lockhart Grantees. It also states that it is "filed in correction of and complete substitution for" the Distribution Deed and First Correction Deed in order to correct the legal description of the subject property. Those prior Deeds are otherwise ratified and confirmed.

Lockhart argues that the Second Correction Deed ratifies and confirms the "give" language in the prior Deeds because that language is not part of the legal description of the property. But this argument renders much of the Second Correction Deed superfluous, including the recitation that the Interest was "granted[,] sold, and convey[ed]" for a stated monetary consideration. We reiterate that, in construing a deed, we must give meaning and effect to every word and phrase. *U.S. Shale Energy*, 551 S.W.3d at 151. Consequently, we cannot simply ignore that the Second Correction Deed employs terminology of sale and omits the word "give." Of course, we also cannot ignore the language ratifying and confirming the prior Deeds. But reading the Second Correction Deed as a whole, and harmonizing its provisions, we conclude that it ratifies and confirms the prior Deeds in every respect that does not conflict with the express terms of the Second Correction Deed. *See id*. We therefore give effect to the superseding language in the Second Correction Deed stating that the subject property is granted, sold, and conveyed for

25

consideration, rather than given.

Because the conveyance of the Section 38 Interest was ultimately a sale, not a gift, it falls within the powers of sale granted to Lockhart, as Executor of the Estate. The Deeds are therefore neither void nor voidable for lack of authority on the part of the grantor.

### c. Quitclaim Deeds

Lockhart next contends that she has superior title to the Section 38 Interest because the Deeds are merely a quitclaim of the Estate's interest in that property. *See Jackson v. Wildflower Prod. Co.*, 505 S.W.3d 80, 89 (Tex. App.—Amarillo 2016, pet. denied) (quitclaim passes only grantor's interest in property). Appellees acknowledge that whether the Deeds are quitclaim deeds is relevant to their affirmative defenses. *See Kerlin v. Sauceda*, 263 S.W.3d 920, 930 (Tex. 2008) (Brister, J., concurring) (estoppel by deed is not applicable to quitclaim deed); *Jackson*, 505 S.W.3d at 91 (quitclaim deed precludes bona fide purchaser status). But, in the context of Lockhart's claim of superior title, they argue that whether the Deeds are quitclaims is of no consequence because those Deeds would still pass whatever title the grantor owned. *See Jackson*, 505 S.W.3d at 89 (quitclaim deed conveys title if grantor is shown to hold title).

We have held above, in essence, that the Deeds were effective to convey the Section 38 Interest because the sale of that interest was within Lockhart's authority as Executor of the Estate. Nevertheless, given Lockhart's insistence that characterizing the Deeds as quitclaim deeds is dispositive of her trespass to try title action, we will address the quitclaim issue on the merits.

"[A] quitclaim deed is a deed of conveyance intending to pass any title, interest or claim of the grantor, but not professing that such title is valid, nor containing any warranty or covenants for title . . . ." *Rogers*, 884 S.W.2d at 769 (citing BLACK'S LAW DICTIONARY 1126 (5th ed. 1979)).

26

While a warranty deed conveys property, a quitclaim deed conveys only the grantor's rights, if any, in that property. *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486 (Tex. 2005). To determine whether an instrument is a quitclaim deed, we consider the language of the instrument, taken as a whole, to see whether it conveyed property itself or merely the grantor's rights. *Id.*

Ultimately, the question of whether an instrument conveys property or only the grantor's interest in property is determined by ascertaining the grantor's intent, as evidenced by the four corners of the document and the circumstances surrounding its execution and delivery. *Jackson*, 505 S.W.3d at 89. If a deed, viewed as a whole, "discloses a purpose to convey the property itself, as distinguished from the mere right, title, or interest of the grantor, then the instrument is not a quitclaim deed." *Chicago Title Ins. Co. v. Cochran Investments, Inc.*, 602 S.W.3d 895, 901 (Tex. 2020). "Conversely, if the instrument, taken as a whole, indicates the grantor's intent to merely transfer whatever interest the grantor may own, it will be treated as a quitclaim deed." *Jackson*, 505 S.W.3d at 90.

The instrument at issue in *Rogers* stated that the grantor conveyed all of his right, title, and interest in a certain mineral lease, "all without warranty of any kind, either expressed or implied." *Rogers*, 884 S.W.2d at 769. The Supreme Court held that this was "the essence of a quitclaim deed." *Id.* The instrument at issue in *Geodyne* similarly stated that it conveyed all of the grantor's right, title, and interest in a certain mineral lease, without warranty of title, express or implied. *Geodyne*, 161 S.W.3d at 486-87. The Supreme Court held that it was a quitclaim deed as a matter of law. *Id.*

On the other hand, the instrument at issue in *Bryan v. Thomas*, 365 S.W.2d 628 (Tex. 1963),

stated that the grantors conveyed all of their undivided mineral interest and "conclude[d] with the usual habendum and general warranty clauses." *Id.* at 630. The court held that this instrument was "more than a quitclaim deed." *Id.*

The Distribution Deed in this case recites that Lockhart, individually and as Executor of the Estate, conveys "all of the Estate's interest, if any," in a portion of the Section 38 Interest. It further recites that the grantor and her heirs will "warrant and forever defend the said property . . . against every person lawfully claiming or to claim the same or any part thereof, by, through, or under GRANTOR, but not otherwise."

Nowhere in the Distribution Deed does Lockhart state that the Estate actually owns the Section 38 Interest. *Geodyne*, 161 S.W.3d at 486; *see Rogers*, 884 S.W.2d at 769; *Enerlex, Inc. v. Amerada Hess, Inc.*, 302 S.W.3d 351, 354 (Tex. App.—Eastland 2009, no pet.). On the contrary, the instrument identifies, and conveys, only "all of the Estate's interest, if any . . . ." This language reflects an intent to convey only the grantor's interest in the property rather than the property itself. *See Geodyne*, 161 S.W.3d at 485; *Rogers*, 884 S.W.2d at 769.

The First Correction Deed, however, states that the intent of the Distribution Deed was to convey "all of the interest in the mineral estate owned by the Grantor, individually and as Executor of the Estate of Warren L. Lockhart," without any qualification such as "if any." The Second Correction Deed likewise states that grantor conveyed "all of Grantor's interest in the oil, gas, and other minerals," without qualification. This language in the subsequent and superseding Correction Deeds supports the conclusion that they are not quitclaim deeds.

In addition, the Distribution Deed contains a special warranty, which is incorporated into both of the Correction Deeds. A special warranty is one by which a grantor "warrants the title only

28

against those claiming 'by, through or under' the grantor." *Chicago Title*, 602 S.W.3d at 902-03. Lockhart contends that the inclusion of a special warranty does not preclude the deed from being a quitclaim deed. *See Enerlex*, 302 S.W.3d at 355 (holding a deed was a quitclaim deed despite inclusion of a general warranty). But recent Supreme Court precedent is to the contrary.[10] *See Chicago Title*, 602 S.W.3d at 906.

As the Supreme Court explained in *Chicago Title*, "[a] warranty clause in a conveyance, either general or limited, is no part of the conveyance proper; it neither strengthens, enlarges, nor limits the title conveyed, but is a separate contract on the part of the grantor to pay damages in the event of failure of title." *Id.* at 902. It does not warrant the grantor's title, but instead warrants the grantee's title. *Id.* at 906. Consequently, the Court further explained:

> As such, the special warranty clause speaks to the grantor's liability, not its conveyance of property. And unlike a quitclaim deed, a special warranty clause still protects the grantee with respect to a failure or defect of title created by the grantor.

*Id.* (citations omitted).

Our reading of *Chicago Title* leads us to conclude that a deed containing a special warranty is not a quitclaim deed because it gives the grantee recourse against the grantor for any claim of title defect arising by, through or under such grantor. *See id.*; *see also Rogers*, 884 S.W.2d at 769 (quitclaim deed contains no warranty of title). Accordingly, because the Deeds in this instance contain a special warranty, we conclude they are not quitclaim deeds.

---

[10] Lockhart asserts in her reply brief that this Court is bound to apply the precedent of the Eastland Court of Appeals, from which this appeal originated, and, therefore, we are bound by the holding of that court in *Enerlex*. *See* TEX. R. APP. P. 41.3 (precedent in transferred cases). That reply brief was filed before the Supreme Court issued its opinion in *Chicago Title*. As the Texas Supreme Court is superior to both this Court and the Eastland Court of Appeals, we are bound to follow *Chicago Title* rather than *Enerlex. See Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008) ("It is fundamental to the very structure of our appellate system that this Court's decisions be binding on the lower courts.").

### d. Validity of the Correction Deeds

Lockhart next asserts that the Correction Deeds are void because they made material changes to the Distribution Deed, yet they were not signed by the Lockhart Grantees. She relies for this assertion on section 5.029 of the Texas Property Code, which provides that a correction deed that makes a material change to a recorded instrument of conveyance must be executed by each party to the original conveyance. TEX. PROP. CODE ANN. § 5.029(a), (b)(1).

The effective date of section 5.029 is September 1, 2011. The First Correction Deed was executed and recorded in 2003. Lockhart notes that the Property Code provides that a correction instrument recorded before September 1, 2011, that substantially complies with Section 5.028 or 5.029 is "effective to the same extent as provided by Section 5.030 . . . ." TEX. PROP. CODE ANN. § 5.031. From this, she argues that a pre-September 1, 2011, correction deed that does not substantially comply is void. We disagree. While such a correction deed may not be effective "to the same extent as provided by Section 5.030[,]" nothing in the statute renders it without *any* effect. *See id*. In other words, nothing in the statute renders such a correction deed void, and Lockhart has identified no authority construing the statute to have that effect.

Prior to the effective date of section 5.029, the propriety of a correction deed was governed by the common law, in general, and by the Supreme Court's opinion in *Myrad Properties, Inc. v. LaSalle Bank National Association*, 300 S.W.3d 746 (Tex. 2009), in particular. Under *Myrad*, correcting a facial defect in a deed was recognized as a permissible use of a correction deed, while conveying an additional, separate parcel of land was not. *Id.* at 750. The change effected by the First Correction Deed was to correct a scrivener's error whereby reference was erroneously made to "[t]he surface rights only," despite the fact that the remainder of the Distribution Deed clearly

demonstrated an intent to convey mineral rights. This constituted the correction of a facial defect in the Distribution Deed, as permitted under *Myrad*.

The Second Correction Deed was executed and recorded in 2014, after the effective date of section 5.029. But the Second Correction Deed is not governed by that statute insofar as it corrects the legal description of the property conveyed, because that is a nonmaterial change that is governed by section 5.028, not section 5.029. *See* TEX. PROP. CODE ANN. § 5.028 (nonmaterial change includes "correction of an inaccurate or incorrect element in a legal description"). And section 5.028 does not require the signatures of the grantees. *See id.*

Lockhart identifies other differences, though, between the Second Correction Deed and its predecessors, which she contends are material. Those changes include adding consideration language, omitting the word "give," adding the word "sold," and changing the habendum clause. We agree that these are material changes subject to section 5.029. But Lockhart has provided no authority, nor are we aware of any, to support the proposition that failure to comply with that statute renders the Second Correction Deed *void*.

Lockhart has not established that either the First or the Second Correction Deed is void for lack of the Lockhart Grantees' signatures.

The record establishes that Lockhart, as Executor of the Estate, had both capacity and authority to execute the Deeds, the Section 38 Interest fell within her power of sale as Executor, the Deeds effected a sale rather than a gift, and the Correction Deeds are not void for lack of the Lockhart Grantees' signatures. The record thus conclusively negates Lockhart's claim to superior title and defeats her trespass to try title action.

We overrule Issue One.

31

## C. Issue Two: conclusion concerning trespass to try title

Because we conclude that the trial court's take-nothing judgment on Lockhart's trespass to try title claim may be affirmed for the above reasons, we need not address her second issue concerning Appellees' affirmative defenses.[11]

We overrule Issue Two.

## D. Issue Three: the trial court's striking of Lockhart's affidavit

In her final issue on appeal, Lockhart asserts that the trial court erred by striking her summary judgment affidavit in its entirety. Appellees objected to various statements in that affidavit on the grounds that they were self-serving, conclusory, and inadmissible parol evidence. The trial court sustained these objections by written order that specifically identifies the statements to which objection was made and also generally states that Appellees' objections to the affidavit are sustained. We do not find any order in the record striking Lockhart's affidavit in its entirety.

On appeal, Lockhart argues that her affidavit statements that she received no consideration for the Distribution Deed or the Correction Deeds, and her recitation of facts authenticating the Trust Agreement, were not conclusory. But Appellees objected to her statements concerning consideration on the ground that they contradict the terms of the Deeds and are, for that reason, inadmissible parol evidence. The trial court did not specify the grounds on which it granted Appellees' objections.

Lockhart makes no mention of Appellees' parol evidence objection in her opening brief. If

---

[11] We acknowledge that Appellees contend that the judgment may be summarily affirmed based on its limitations defense because Lockhart does not address that defense on appeal. *See Rangel v. Progressive Cty. Mut. Ins. Co*., 333 S.W.3d 265, 269 (Tex. App.—El Paso 2010, pet. denied) (summary judgment must be affirmed if there is unchallenged ground upon which trial court could have based summary judgment). But Appellees did not raise limitations as a defense to the trespass to try title action; it asserted limitations only against Lockhart's rescission and cancellation claim, which is not at issue in this appeal.

an appellant fails to attack all independent bases or grounds that support a ruling, then we must affirm that ruling. *Oliphant Fin. L.L.C. v. Hill*, 310 S.W.3d 76, 77–78 (Tex. App.—El Paso 2010, pet. denied). Lockhart does address parol evidence in her reply brief, but "[a]n issue raised for the first time in a reply brief is not properly preserved for our review." *Burrus v. Reyes*, 516 S.W.3d 170, 182 n.8 (Tex. App.—El Paso 2017, pet. denied) (citing *Armstrong v. Roberts*, 211 S.W.3d 867, 873 n.4 (Tex. App.—El Paso 2006, pet. denied)). The trial court's evidentiary ruling may be upheld on this ground alone.

In any event, Lockhart's argument fails on the merits. She relies on the following statement of this Court in *Busby v. Guaranty Title & Trust Co.*, 93 S.W.2d 183 (Tex. App.—El Paso 1936, writ dism'd):

> When the whole consideration is not expressed in the writing, parol evidence is admissible to supply the deficiency, and, where the parol agreement does not contradict the writing, the allegations of fraud, accident, or mistake are not necessary to account for the failure to express the full consideration; such right to show the real understanding of the parties exists at common law.

*Id.* at 187.

This statement is inapplicable to the present case to the extent that Lockhart sought—through her affidavit—to establish that the Deeds evidence a gift rather than a sale. As previously discussed, the First Correction Deed refers to "adequate consideration," and the Second Correction Deed specifies consideration in the amount of ten dollars. The Lockhart affidavit does not attempt to supply a deficiency in the expression of consideration, it seeks to negate the element of consideration. It thus contradicts the Correction Deeds and is inadmissible. *See id.* (parol evidence admissible to supply deficiency if it does not contradict the writing).

Concerning Lockhart's statements purporting to authenticate the Trust Agreement, we do

33

not find in the record any objection to those statements, or any order striking them. In any event, even if they were stricken, Lockhart has not demonstrated any harm. *See* TEX. R. APP. P. 44.1. In fact, she contends that the facts concerning the Trust Agreement are not controverted, and we note that neither party raises any argument on appeal concerning the authentication of that agreement. Any error in striking this portion of Lockhart's affidavit, if the trial court did so, is not reversible. *See id.*

We overrule Issue Three.

## III.   CONCLUSION

Lockhart has not demonstrated that the trial court abused its discretion by sustaining Appellees' objections to her summary judgment affidavit. She has also not demonstrated that the trial court erred by denying her motion for summary judgment on her trespass to try title action, or by granting Appellees' motion for summary judgment and entering a take-nothing judgment on Lockhart's claim. The judgment of the trial court is affirmed.

GINA M. PALAFOX, Justice

March 24, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

34